MALLOY, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

(148 N. W. 598.)

1.   Appeal—Error—Review, Scope of—Brief—Recital as to Evidence.
    . Where a verdict was directed for defendant, and plaintiff

appealed, but his brief did not recite that it contained a statement of all material evidence received on trial, as required by Laws 1913, Ch. 172, and Supreme Court Rule 6 (140 N. W. viii), it will be assumed that every fact was proven which was necessary to justify direction of verdict, and the Supreme court will only examine the testimony to determine whether there was any substantial conflict therein.

2. **Malicious Prosecution—Person Accused—Investigation of Character—Basis of Complaint.**

Where a special agent and detective of defendant railroad company, at the time he charged plaintiff with theft of certain coal, had no knowledge of plaintiff's reputation for honesty, but had been informed by plaintiff's co-employee, who was working with plaintiff on a switch engine when plaintiff transferred the coal from the company's track to a certain coal yard, that he saw plaintiff erase marks on the car indicating that it was "company coal," and the agent, on further investigation, discovered that plaintiff had been drinking a good deal, that he had been discharged for being drunk, and that he left his engine in the yard on occasions to go to a saloon, and all these facts were reported by the agent to state's attorney, **held,** that the agent was not at fault in failing to make further inquiries concerning plaintiff's character before signing a complaint charging him with theft of the coal.

3. **Same—Defenses—Investigation and Disclosure of Facts to Prosecuting Attorney.**

In an action for malicious prosecution, evidence **held** insufficient to show that defendant's agent, before signing complaint against plaintiff, did not make proper investigation as to whether plaintiff worked for the railroad company on the day when he was charged with theft of company's coal, and did not make full and truthful disclosure of the facts to prosecuting attorney.

4. **Same—Malice—Presumption—Failure to Prosecute.**

In an action for malicious prosecution, malice will not be presumed from mere failure to prosecute.

5. **Same—Defenses—Independent Investigation by Prosecuting Attorney—Burden of Proof.**

Where, after defendant's agent had disclosed to a prosecuting attorney supposed facts concerning plaintiff's guilt of theft of coal, the prosecuting attorney instituted an independent investigation, and found the facts to be sufficient, in his own mind, to warrant prosecution, and did not rely upon the agent's representations, and then advised defendant's agent to sign a complaint against plaintiff, who was subsequently discharged, **held,** defendant was not liable for malicious prosecution; the burden resting on plaintiff to affirmatively show

that defendant was the proximate and efficient cause of maliciously putting the law in motion.

McCoy, J., taking no part in the decision.

(Opinion filed September 8, 1914.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by J. F. Malloy against the Chicago, Milwaukee & St. Paul Railway Company, for damages for malicious prosecution. From a judgment for defendant upon a directed verdict, and from an order denying a new trial, plaintiff appeals. Affirmed.

*George W. Egan,* and *Kenyon, Kelleher & O'Connor,* for Appellant.

*William G. Porter, Ed. L. Grantham,* and *C. O. Bailey,* for Respondent.

(2) Under point two of the opinion, Appellant cited:

Railroad Co. v. Brown (Kan.) 48 Pac. 31; Harr v. Ward, 73 Ark. 437, 84 S. W. 496; Wells v. Parker, 76 Ark. 41, 88 S. W. 602; Chicago Forge & Bolt Co. v. Rose, 69 Ill. App. 123; Torsch v. Dell, 88 Md. 459, 41 Atl. 903; Thurkettle v. Frost, 137 Mich. 115, 100 N. W. 283; Kehl v. Hope Oil Mill & Compress Co., 77 Miss. 762, 27 So. 641; Bell v. Atlantic City Ry. Co., 202 Penn. 178, 51 Atl. 600; Struby-Estabrook Merc. Company v. Kyes, 48 Pac. 663; Hepler v. Quandt, 129 N. W. 1099; Smith v. Walter, 17 Atl. 466 (Penn.); Jackson v. Bell (S. D.) 58 N. W. 671.

Respondent cited:

Krause v. Bishop, 18 S. D. 298; Anderson v. Friend, 85 Ill. 135.

(3) Under point three of the opinion, Appellant cited:

Schattgen v. Holmbeck (Ill.) 36 N. E. 963.

(4) Under point four of the opinion, Appellant cited:

Neys v. Taylor, 81 N. W. 901; Smeaton v. Cole, 94 N. W. 909.

Respondent cited:

McIntosh v. Whales (Wyo.) 134 Pac. 274; Stewart v. Sonnenborn, 98 U. S. 194; Prim v. Singer Sewing Mch. Co. (Mich.) 142 N. W. 377; Harris v. Q. O. & K. C. Ry. Co. (Mo.) 157 S. W. 894; Anderson v. Friend, 85 Ill. 135; Maynard v. Sigman (Neb.) 91 N. W. 576.

GATES, J.   Plaintiff, an employee of the defendant company at Aberdeen, was, on February 8, 1908, arrested upon a complaint made by one Sheehan, a special agent or detective of the company, charging him with the theft of company coal on October 25, 1907.   A preliminary hearing was had on February 13, 1908, and he was bound over to the circuit court and confined in the Brown county jail until March 27, 1908, when he was released upon bail. On December 5, 1908, the cause was dismissed without trial upon the recommendation of the state's attorney.   This is an action for malicious prosecution and was begun nearly five years after plaintiff's arrest, viz., on January 8, 1913.

At the conclusion of the trial, the learned trial court directed the jury to return a verdict for defendant, upon the ground that the state's attorney of Brown county, upon a full and fair statement of all the facts known to the detective or which he could reasonably learn, advised the detective that the facts recited constituted sufficient evidence to justify the prosecution; that it constituted probable cause to believe this plaintiff guilty.   Krause v. Bishop, 18 S. D. 298, 100 N. W. 434.   Appellant urges:

"(a) That the question as to whether or not Sheehan ascertained all the material facts in connection with the question of the guilt of Malloy, which a reasonably diligent investigation would have disclosed, was for the jury.

"(b) That the question whether or not Sheehan made a truthful statement of those facts within his knowledge to L. T. Van Slyke, the state's attorney, was for the jury.

"(c) That the question as to whether or not Sheehan filed the information under instructions from the 'company,' or under the direction of Van Slyke, was for the jury.

"(d) That the question as to whether or not Van Slyke advised Sheehan to file the information was for the jury.

"(e) That the question as to whether or not, if Van Slyke advised the prosecution, Sheehan acted under the advice in good faith, or because he was instructed to do so by the company, was for the jury.

"(f) That the question as to whether or not the prosecution of Malloy was instituted by Sheehan in good faith, for the purpose of vindicating the law, or was instituted by him for the pur-

pose of forcing Malloy to give information respecting the guilt of another, was a question for the jury."

[1] These grounds are predicated upon the alleged insufficiency of the evidence to sustain the action of the trial court in directing the verdict. Appellant's brief does not contain the recital, required by chapter 172, Laws of 1913, and by rule 6 of this court (140 N. W. viii), that the brief contains a statement of all the material evidence received upon the trial. Gilfillan v. Schaller, 32 S. D. 638, 144 N. W. 133. We will assume, therefore, that every fact was proved which was necessary in order to justify the action of the trial court in directing the verdict and will only examine the testimony for the purpose of determining whether there was any substantial conflict therein, i. e., whether any fact was affirmatively proved which showed that a full and fair disclosure of the facts learned by Sheehan, or which he could reasonably have learned, was not made by him to the state's attorney prior to the time he signed the complaint for plaintiff's arrest.

[2] It is claimed by appellant that Sheehan did not make any investigation as to the character and reputation of plaintiff before signing the complaint. He had been informed by Pickering, who was working with plaintiff on the switch engine, that plaintiff did transfer a car of coal from the company coal track and place it before one Anderson's coal yard on October 25, 1907; that he had seen plaintiff rub the chalk marks, "C. C.," meaning company coal, off from the car, and Sheehan had been informed by Cully, the yardmaster, that O'Brien would give testimony to the same effect. The following contents of the printed record show what investigation Sheehan made as to plaintiff's character:

"Q. You did not tell Mr. Van Slyke anything about Malloy's character, did you? A. I told him all I had found out about it. Q. What did you tell him about Malloy's character when you went to him? A. I told him what I had found out about his coal deals, and one thing and another, and that he had been drinking a good deal around town and had been discharged for being drunk on duty. I heard a rumor around there that he was discharged for being drunk and that he used to leave the engine in the yard and go off to the saloon. Q. Why did you tell him that Malloy was a man who drank? A. Well, I heard it from several parties and several railroad men. Mr. Cully, the yardmaster, and the chief of

police, Mr. Zerbes, told me, and I guess pretty nearly everybody I asked; they all said the same thing. I did not tell Van Slyke anything about him being a man of bad character or thief or anything like that. I explained what he had done about leaving his engine and going to the saloon. I did not explain anything about him being a man of bad character or thief or anything like that. I did not tell him that he had been stealing before. I just told him what O'Brien and Pickering had said. I did not tell him that I had investigated his character."

There is nothing further in the record which throws light upon plaintiff's character or reputation. We do not think, under the facts in this case, that Sheehan can be held at fault in not making further inquiries as to plaintiff's character. If it had been shown that Sheehan knew that plaintiff's reputation for honesty was good and that he had failed to report such knowledge to the state's attorney, then a different question would be presented. 19 A. & E. Ency. (2d Ed.) 698; McIntosh v. Wales (Wyo.) 134 Pac. 274; Johnson v. Miller, 69 Iowa, 562, 29 N. W. 743, 58 Am. Rep. 231; Holliday v. Holliday, 123 Cal. 26, 55 Pac. 703.

[3] It is further contended that plaintiff did not work for the company on October 25, 1907, and that an examination of the company's records would have disclosed this fact. Plaintiff's testimony in this respect we deem immaterial to the issue in question. The alleged fact that plaintiff did not work on that date was first made to appear at the time of the trial, and at that it did not appear until plaintiff's rebuttal. Sheehan had the positive statement of Pickering that plaintiff did move that car on that day, and the car records corroborate his statement as to the movement of the car. Moreover, it does not affirmatively appear that Sheehan did not examine the company's records to ascertain as to whether plaintiff worked for the company on October 25, 1907.

It further appears that, on the night before the complaint was filed, Sheehan, Mr. Van Slyke, the state's attorney, Mr. J. H. Perry, an attorney for the company, the chief of police, and Morrison, the superintendent of the company, were at Mr. Perry's office, and that plaintiff was sent for and appeared there. He was charged with the crime and denied it. He said that questions were also asked of him in regard to his relations with Anderson and that they wanted him to give testimony which would help convict

Anderson; that Sheehan said, "Mr. Malloy, I have got orders from the company to arrest you if you don't tell us what you know about Anderson," and that Morrison said: "Malloy, we know you are innocent. We know that, but we want you to help us out." Giving full credence to this testimony, the fact remains undisputed that after that meeting both Mr. Perry and the state's attorney advised Sheehan that there was a good case against this plaintiff. The further fact appears that the state's attorney had made investigation of his own as to the probable guilt of this plaintiff independent of the statements made to him by Sheehan. We do not think that this testimony establishes the fact that a full and fair disclosure was not made to the state's attorney nor that it tends to negative that issue. The statement said to have been made by Sheehan is not inconsistent with a full belief on his part in the guilt of plaintiff, but indicates a willingness to refrain from prosecution if he would turn state's evidence and help in the conviction of Anderson. The statement made by Morrison was of no importance. He is not shown to have had any knowledge of the alleged facts upon which the complaint was based, and, so far as the record shows, had nothing to do with the case at any other time than at this interview.

[4] Plaintiff also contends that malice is presumed because of the failure to prosecute. This court disposed of that question in Krause v. Bishop, 18 S. D. 298, 100 N. W. 434, wherein it said:

"We are of the opinion that, in the absence of proof of malice, other than proof that the plaintiff was acquitted, it is the duty of the court to presume that the defendant acted in good faith, as actual malice and bad faith are never presumed by the court."

A careful examination of the printed record fails to reveal any substantial conflict in the testimony as to the grounds upon which the trial court directed the verdict.

The other assignments of error argued, 51 in number, relate to rulings upon evidence. Two-thirds of these relate to evidence admitted over plaintiff's objection. It is unnecessary for us to pass upon the rulings admitting evidence, because, in the absence of the required statement in the brief that it contains all of the material evidence received upon the trial, we must assume that there was admissible evidence sufficient to support the verdict. Every necessary presumption is indulged in to sustain the action

of a trial court. Therefore, if there was evidence sufficient to support the directed verdict, the rulings complained of could not have been prejudicial to appellant even if erroneous. There were no rulings rejecting evidence which could have been prejudicial to appellant. If such evidence had been received and it had been as broad as indicated by the questions, it would not have touched upon the grounds upon which this case is decided, viz., that there is nothing affirmatively presented in the record which shows that the trial court erred in directing a verdict for the reasons assigned.

[5] We think the record presented to this court would have justified the trial court in directing the verdict upon another ground specified in defendant's motion for such directed verdict, viz., that the evidence showed without dispute that the state's attorney, after having made a full and personal investigation of the matter, prepared the complaint and advised Sheehan to father it, thus eliminating any question as to the liability of the defendant in this case. While Sheehan made a disclosure of the supposed facts to the state's attorney, the latter did not rely upon that disclosure. He made an independent investigation and it can be fairly deduced from the evidence that it was because of such investigation, and not because of Sheehan's representations, that the state's attorney advised the prosecution. After seeing Pickering, the state's attorney made an investigation of the car movements. He said: "The dates and movements of the car agreed with Pickering's story, and I ordered this arrest." The state's attorney also testified in regard to the interview in Mr. Perry's office: "My impression is I made up my mind after that interview that he (Malloy) was guilty." In his article on Malicious Prosecution, in Cyc., the late Justice Jaggard said (26 Cyc. 17):

"To sustain the action it must affirmatively appear as a part of the case of the party demanding damages that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion."

It occurs to us that it clearly appears that the state's attorney was the proximate and efficient cause of putting the law in motion, and moreover that there was an entire absence of malice on the part of any one.

The judgment and order denying a new trial are affirmed.

McCOY, J., took no part in this decision.