2001 SD 111

**Rocky D. RANTAPAA and Margie B. Rantapaa, Individually and as Guardian Ad Litem of Matthew Rantapaa, a minor, Plaintiffs and Appellants,**

v.

**BLACK HILLS CHAIR LIFT CO., Plaintiff d/b/a Terry Peak Ski Area, Defendant, Third Party Plaintiff and Appellee,**

v.

**Curtis Allen, Third–Party Defendant and Appellee.**

**No. 21718.**

Supreme Court of South Dakota.

Argued May 30, 2001.

Decided Aug. 22, 2001.

Rehearing Denied Sept. 28, 2001.

Kennith L. Gosch of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, SD, Gregory A. Eiesland of Johnson, Eiesland, Huffman, & Clayborne Law Firm, Rapid City, SD, Attorneys for plaintiffs and appellants.

Jay C. Shultz and Steven J. Oberg of Lynn, Jackson, Shultz & Lebrun, Rapid City, SD, Attorneys for defendant and appellee Black Hills Chair Lift Co., d/b/a Terry Peak Ski Area.

J. Crisman Palmer of Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD, Attorneys for appellee, Curtis Allen.

CALDWELL, Circuit Judge

[¶ 1.] Rocky and Margie Rantapaa (Rantapaa), guardians ad litem for Matthew Rantapaa (Matthew), appeal a verdict in favor of the Black Hills Chair Lift Company (Black Hills Chair) in their action for negligent design and operation of the Terry Peak Ski Area. We reverse and remand.

FACTS

[¶ 2.] Black Hills Chair owns and operates the Terry Peak Ski Area which is open to the public for a fee.[1] On January 11, 1999, Matthew, an eleven-year old boy on a school outing, was injured in a collision with another downhill snow skier, Curtis Allen (Allen). The accident occurred at the Terry Peak Ski Area. Matthew and Allen collided where two separate ski runs, Surprize[2] and Snowstorm, meet. The ski area is designed so that two beginner runs, Snowstorm and Little Phil, and two intermediate runs, Surprize and Black Moon, empty into a small area just above an advanced or expert run called the Falls.

[¶ 3.] Dense pine trees separate Surprize and Snowstorm. Skiers that head down these two runs are not able to see one another until after they meet at the bottom of the runs. An expert skier who wishes to ski the Falls must cross over the bottom of Surprize. Also, a beginning skier skiing down Surprize must cross over the bottom of Snowstorm to avoid going down the Falls. Several signs on the Snowstorm run stating "easiest way down" direct novice skiers to an egress road that leads to the chair lift. The "easiest way down" and the Falls are the only ways to get to the chair lift from these two runs.

[¶ 4.] On the day of the accident, Matthew was skiing Terry Peak for the first time. Matthew was an inexperienced skier, only skiing four to five times in the

---

1. Terry Peak Ski Area is near Lead, South Dakota, in Lawrence County.

2. Although "Surprize" appears to be misspelled, the run was actually named for an old mining claim that existed in the area long before the construction of the ski area.

past at a different ski resort. Matthew skied down Surprize. At the same time, Allen, an expert skier, skied down Snowstorm, heading for the Falls. Both skiers were skiing very close to the tree line that separates the two runs.

[¶ 5.] In order for Matthew to get to the trail marked "easiest way down," he had to cross the area where Snowstorm and Surprize converge. Due to the dense tree line, Matthew could not see Allen coming down Snowstorm. Just before impact, Matthew turned left into Snowstorm and Allen, traveling at a high rate of speed and in a tucked position, collided with Matthew. Allen hit Matthew with such force that Matthew's skull was fractured.[3] Matthew was air-evacuated to the University of Minnesota Hospital for emergency surgery on his brain and skull. Matthew suffered permanent brain injury.

[¶ 6.] Rantapaa[4] sued Black Hills Chair alleging negligence in the design, maintenance or supervision of Terry Peak Ski Area.[5] Regarding the issue of supervision, the testimony at trial revealed that ski patrollers were in the area and responded almost immediately to the accident. Matthew's school also provided chaperones although it is not clear whether Matthew was near his chaperone at the time of the accident.

[¶ 7.] On the claim of negligent design, Rantapaa claims that professional engineers did not design Terry Peak. The owners of Black Hills Chair designed and constructed the ski runs at Terry Peak. Black Hills Chair did not hire an engineer to design the runs and has not had an engineer check the design of the runs for safety.

[¶ 8.] Terry Peak's General Manager, Tom Marsing, testified that the advent of professional engineering in ski area design is a relatively recent phenomenon. Marsing also testified that having different runs empty into a common area near the bottom of a ski hill is a necessary practice and, in his opinion, does not present a problem.

[¶ 9.] To the contrary, Rantapaa maintains that the design of the ski runs encourages expert skiers to cross over the beginner's ski area. Rantapaa claims that there is inadequate visibility for skiers at the convergence of Snowstorm and Surprize due to the dense tree line that separates the two runs. Rantapaa contends that neither Matthew nor Allen could see each other until immediately before impact because of the dense tree line. Rantapaa offered evidence that a "wing gate" is one acceptable method in the skiing industry to warn skiers of dangers on a slope. Rantapaa alleges that Black Hills Chair had a duty to use a wing gate to warn Matthew of the blind intersection.

[¶ 10.] Following presentation of the evidence, the trial court instructed the jury that it was Rantapaa's burden to prove Black Hills Chair was negligent in its design of the slopes; its failure to warn of the danger at intersecting trails; or its failure to supervise slope intersections. The trial court defined negligence for the

3. During his testimony, Allen assumed that he and Matthew hit head-to-head because both were knocked unconscious for a short time and sustained injury to their heads. Allen sustained a small head wound.

4. Mr. and Mrs. Rantapaa sued Black Hills Chair individually and as Guardians Ad Litem of Matthew Rantapaa.

5. Black Hills Chair brought a third-party complaint against Allen for indemnity and contribution. For purposes of this appeal, Allen has joined Black Hills Chair's arguments.

jury. The trial court also gave several other instructions. Specifically, the trial court instructed the jury on a Lawrence County ordinance called the Skier Responsibility Ordinance [6] which exempts Black Hills Chair from liability resulting in injuries from any of the inherent dangers and risks of skiing. Rantapaa's counsel objected to this instruction on the grounds that it conflicts with South Dakota's statutory and common law of negligence. The trial court, however, overruled the objection.

[¶ 11.] At the conclusion of the case, the jury returned a unanimous special verdict in favor of Black Hills Chair. The jury specifically found that Black Hills Chair was not negligent. The jury did not reach any of the remaining issues.

[¶ 12.] Rantapaa appeals the submission of Instruction 17 to the jury. He claims that Instruction 17, which is a portion of the Skier Responsibility Ordinance, is invalid because it attempts to change the general laws of South Dakota.

## STANDARD OF REVIEW

[¶ 13.] Under the applicable standard of review, we construe jury instructions as a whole to determine if they establish a full and correct statement of the law. *See Dunes Hospitality v. Country Kitchen Intern.*, 2001 SD 36, ¶ 7, 623 N.W.2d 484, 487; *State v. Frazier*, 2001 SD 19, ¶ 35, 622 N.W.2d 246, 259; *Veeder v. Kennedy*, 1999 SD 23, ¶ 32, 589 N.W.2d 610, 618; *Davis v. Knippling*, 1998 SD 31, ¶ 4, 576 N.W.2d 525, 526. Conflicting, misleading or confusing instructions may create reversible error. *See Veeder*, 1999 SD 23 at ¶ 32, 589 N.W.2d at 618. An appellant must show not only that a particular instruction was erroneous, but also that it was prejudicial, meaning the jury probably would have returned a different verdict if the faulty instruction had not been given. *See Frazier*, 2001 SD 19 at ¶ 35, 622 N.W.2d at 259.

## ISSUE

[¶ 14.] **Whether the trial court erred in giving Instruction 17 which is a portion of the Lawrence County Skier Responsibility Ordinance?**

[¶ 15.] Rantapaa argues that the trial court erred in submitting Instruction 17 to the jury and that he was prejudiced. Jury Instruction 17 provides as follows:

An ordinance in Lawrence County [7] ... provides in part:

6. Early in this lawsuit, Black Hills Chair moved for summary judgment based upon the Skier Responsibility Ordinance and the common law doctrine of primary assumption of the risk. In denying Black Hills Chair's motion, the trial court reasoned:

Based upon my review of the applicable law, the briefs and arguments of Counsel, I'm going to deny the motion for summary judgment. The duty of care ... is defined by SDCL 20–9–1, which says that everybody is responsible for damages for injuries to persons or property caused by their failure to use ordinary care ...

To the extent that the Lawrence County Skier Responsibility Ordinance clarifies and defines the inherent risk of skiing, I think it's valid and not in conflict with State law. But I think, under our statutory scheme of

tort law, that where the Plaintiff suffers an injury which is caused by an unnecessary hazard that could have been eliminated by the use of ordinary care, such a hazard is not ... an inherent risk of skiing and would fall outside a statute that defines the inherent risks and would allow for liability.

7. The ordinance provides in relevant part:

SECTION THREE—LIABILITY OF SKI AREA OPERATOR

No skier may make any claim against or recover any money damages from any ski area operator for injuries resulting from any of the inherent dangers and risks of skiing. If a ski area operator fails to comply with the provisions of Section Two, and if another person is injured as a proximate cause of such failure, such operator is civil-

A skier shall:

(1) Assume the risk of and all legal responsibility for any injury to person or property resulting from any of the inherent dangers and risks of skiing, except that a skier is not precluded under this Ordinance from suing another skier for any injury to person or property resulting from such other skiers' acts or omissions . . .

"Inherent dangers and risks of skiing" mean those dangers or conditions which are an integral part of the sport of downhill skiing, including changing weather conditions; snow conditions as they exist or may change such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, stream beds, and trees, or other natural objects and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, other man-made structures and components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads and catwalks or other terrain modification; collisions with other skiers; and the failure of skiers to ski within their own abilities.

(2) Ski within the limits of individual skill and expertise, so as to avoid injury to self and others.

(3) Maintain a reasonable control of speed and direction, and maintain a proper lookout at all times, so as to prevent injury to self and others.

If you find that the collision between Matthew and [ ] Allen occurred as the result of an "inherent danger and risk of skiing," recovery cannot be had herein and your verdict must be for Black Hills Chair Lift Company.

This ordinance sets the standard of care of a reasonable person. If you find [ ] Allen violated it, such violation is negligence. (footnote added).

Although the trial court instructed the jury on a portion of the Lawrence County Skier Responsibility Ordinance, the trial court immediately gave two additional instructions. Instruction 18 provides:

Although a ski area has no duty to protect against risks inherent in the sport, it does owe a duty not to increase risks of activity beyond risks inherent in the sport.

The foregoing ordinance does not prevent a suit by a skier against a ski area for negligence in design and maintenance, failure to warn and/or failure to supervise operations, which negligence increases the risks of skiing beyond those inherent in the sport.

ly liable to the injured person. However, a ski area operator has no duty to eliminate, alter, control, or lessen any risk or danger inherent in the sport of downhill skiing. . . . SECTION FOUR—SKIER'S DUITES AND CONDUCT
A skier shall:
(1) Assume the risk of and all legal responsibility for any injury to person or property resulting from any of the inherent dangers and risks of skiing, except that a skier is not precluded under this Ordinance from suing another skier for any injury to person or property resulting from such other skier's acts or omissions;
(2) Ski within the limits of individual skill and expertise, so as to avoid injury to self and others;
(3) Maintain reasonable control of speed and direction, and maintain a proper lookout, at all times, so as to prevent injury to self and others. . . .
Skier Responsibility Ordinance.

[¶ 16.] In addition to Instruction 18, the trial court gave Instruction 19, which states:

> Defendant Black Hills Chair Lift Company owed Matthew [ ] a duty to use reasonable or ordinary care to see that the premises was [sic] in a reasonably safe condition. This duty required the defendant Black Hills Chair Lift Company to keep the property reasonably safe for the benefit of Matthew [ ]. The duty includes a duty to warn of concealed or dangerous conditions known to the landowner, a duty to inspect the premises for unreasonably dangerous conditions and a duty to use ordinary care in active operations on the property.

During settlement of the instructions, Black Hills Chair objected to these two additional instructions. The trial court, nonetheless, gave the instructions over its objections.

[¶ 17.] On appeal, we utilize a two prong approach to review jury instructions:

> A party challenging as erroneous a jury instruction must show not only 'that the instruction was in error, but also that it was prejudicial error to the effect that under the evidence, the jury ... probably would have returned a different verdict.'

*City of Sioux Falls v. Hone Family Trust,* 1996 SD 126, ¶ 11, 554 N.W.2d 825, 827 (citations omitted). Thus, Rantapaa must first show that the instruction was in error. If Rantapaa meets this threshold requirement he must then establish that the jury probably would have returned a different verdict if not for the erroneous jury instruction. *Veeder,* 1999 SD 23 at ¶ 14, 589 N.W.2d at 618.

> *a. Was Instruction 17 a misstatement of the law and therefore erroneous?*

[¶ 18.] Rantapaa claims that the giving of Instruction 17, a portion of the Law-

rence County Skier Responsibility Ordinance, was an error because the ordinance is in direct conflict with the general laws of this state. In support of his claim, Rantapaa maintains that the Skier Responsibility Ordinance violates the "Home Rule" clause of the South Dakota Constitution which provides in part: "A chartered governmental unit may exercise any legislative power or perform any function not denied by ... the general laws of the state." SD Const art IX § 2. Specifically, Rantapaa contends that the ordinance conflicts with established principles of tort law by absolving Black Hills Chair from liability imposed by the legislature pursuant to SDCL 20–9–1 and the common law. Thus, argues Rantapaa, any ordinance that directly conflicts with the "general laws of the state" is invalid.

[¶ 19.] The legislature codified common law negligence in SDCL 20–9–1. *Baatz v. Arrow Bar,* 426 N.W.2d 298, 304 (S.D. 1988). SDCL 20–9–1 states:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.

Although the language of SDCL 20–9–1 is very broad and seems to encompass allegations of negligence against a landowner, the legislature has adopted several statues exempting a landowner from liability arising from outdoor recreational activities, including winter sports. *See* SDCL 20–9–12 and 20–9–16. However, SDCL 20–9–16 provides that a landowner may be held liable under SDCL 20–9–1 for any injuries suffered pursuant to outdoor recreational activities if the landowner charges a fee before the invitee enters the land.

[¶ 20.] The only legislative modification to the general rule that a landowner can-

not be liable for injuries suffered on his land due to participation in outdoor recreational activities when the landowner does not charge for entry is SDCL 32–20A–21. In SDCL 32–20A–21, the legislature specifically states that a snowmobiler assumes the risks inherent in the sport of snowmobiling. Accordingly, under SDCL 32–20A–21, the legislature changed the common law defense of assumption of the risk in snowmobiling cases. The legislature has not made a similar law excepting alpine skiing from general tort law. Lawrence County, however, has attempted to change the principles of tort law imposed by the legislature and the common law with the Skier Responsibility Ordinance.

[¶ 21.] In determining the validity of Jury Instruction 17, which is based upon the ordinance, we must examine the validity of the ordinance.[8] Specifically, we must consider two concepts: Lawrence County's home rule authority and the state's power to nullify or preempt local action. *Goodell v. Humboldt County*, 575 N.W.2d 486, 491–92 (Iowa 1998); *see generally State v. Hansen*, 75 S.D. 476, 68 N.W.2d 480 (1955). These concepts are provided for in South Dakota's constitutional grant of county home rule authority. SD Const art IX § 2. Under this article, counties have the authority to "exercise any legislative power or perform any function not denied by its charter, the Constitution or the general laws of the state." *Id.* The concept of home rule is that state and local governments may regulate in the same area if the local rule does not conflict with state law. *See Goodell*, 575 N.W.2d at 492. However, "[a] county in this state is a creature of statute and has no inherent authority[,] ... [but] only such powers as are expressly conferred upon it by statute and such as may be reasonably implied from those expressly granted." *Hansen,*

75 S.D. at 478, 68 N.W.2d at 481 (citations omitted); *Breckweg v. Knochenmus*, 81 S.D. 244, 252, 133 N.W.2d 860, 864 (1965).

[¶ 22.] SDCL 7–18A–2 specifically authorizes a county to adopt ordinances "as may be proper and necessary to carry into effect the powers granted to it by law...." Aside from this statutory grant of legislative power, a county may not pass an ordinance which conflicts with state law. SD Const art IX § 2.

[¶ 23.] There are several ways in which a local ordinance may conflict with state law. In that event, state law preempts or abrogates the conflicting local law. First, an ordinance may prohibit an act which is forbidden by state law and, in that event, the ordinance is void to the extent it duplicates state law. *See People v. Commons*, 64 Cal.App.2d. Supp. 925, 148 P.2d 724, 727 (1944). Second, a conflict may exist between state law and an ordinance because one prohibits what the other allows. *Snow Land, Inc. v. City of Brookings*, 282 N.W.2d 607, 608 (S.D.1979) (citing *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 143 N.W.2d 813 (1966)). And, third, state law may occupy a particular field to the exclusion of all local regulation. *Envirosafe Serv. of Idaho v. Cty. of Owyhee*, 112 Idaho 687, 735 P.2d 998, 1000 (1987). In the instant case, the Skier Responsibility Ordinance conflicts with South Dakota's statutory law of negligence because SDCL 20–9–1 allows a cause of action for negligence against Black Hills Chair and the ordinance tends to forbid it.

[¶ 24.] The Skier Responsibility Ordinance prohibits any skier, such as Matthew, from making any claim against or recovering any money damages from Black Hills Chair if the injury is a result of

---

8. We acknowledge that the propriety of the ordinance itself is not before this Court.

an inherent danger or risk of skiing. *See* Skier Responsibility Ordinance § 3, *supra* n. 7, at 6. Although SDCL 7–18A–2 authorizes Lawrence County to adopt ordinances regulating local concerns, the legislature has never granted Lawrence County the authority to regulate negligence actions or to establish defenses which conflict with the general laws of this State.

[¶ 25.] Three apparent deficiencies exist in the Skier Responsibility Ordinance. The first deficiency is that the ordinance conflicts with South Dakota's statutory and common law of negligence. A local governmental ordinance conflicts with state law when its provisions, express or implied, are inconsistent and irreconcilable with state law. *Lamb v. Mirin*, 90 Nev. 329, 526 P.2d 80, 82 (1974) (citing *Mabank Corporation v. Board of Zoning Appeals*, 143 Conn. 132, 120 A.2d 149 (1956)). Here the definition of "inherent dangers and risks of skiing" in the Skier Responsibility Ordinance is inconsistent and irreconcilable with South Dakota law. The ordinance provides that a skier shall assume the "inherent dangers and risks of skiing." The ordinance then broadly defines "inherent dangers and risks of skiing." This definition, however, encompasses risks not necessarily assumed by a skier. Indeed, the definition within the ordinance operates to shield Black Hills Chair from *any* claims of negligence. This goes too far. Jury instruction 17 which is based upon the ordinance, therefore, precluded Rantapaa's claims. The instruction wrongly advised the jury that Black Hills Chair could not be held liable even if the collision between Matthew and Allen was due to a defect in the design of the ski runs.

[¶ 26.] The second deficiency is that the ordinance completely removes the common law elements of assumption of the risk. Under the common law, assumption of the risk is an affirmative defense to a negligence claim. Accordingly, if the plaintiff establishes that the defendant breached the appropriate standard of care and caused injury, the burden shifts to the defendant to prove that the plaintiff assumed the risk. In South Dakota, assumption of the risk is a tripartite analysis. The defendant must show (1) that the plaintiff had actual or constructive knowledge of the existence of the specific risk involved; (2) that the plaintiff appreciated the risk's character; and (3) that the plaintiff voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice. Failure to establish any one of the above three criteria would be fatal to this defense. *See Ray v. Downes*, 1998 SD 40, ¶ 11, 576 N.W.2d 896, 898; *Mack v. Kranz Farms, Inc.*, 1996 SD 63, ¶ 9, 548 N.W.2d 812, 814; *Bauman v. Auch*, 539 N.W.2d 320, 326 (S.D.1995); *Westover v. East River Elec. Power*, 488 N.W.2d 892, 901 (S.D.1992).

[¶ 27.] Pursuant to the ordinance, a plaintiff is found to have assumed the risk for any injury sustained which resulted from the "inherent dangers and risks of skiing." Therefore, if the injury the plaintiff sustained falls within the all-encompassing definition section of "inherent dangers and risks of skiing," then the defendant is absolved from proving any of the essential elements of assumption of the risk. This contravenes South Dakota case law. In *Bauman*, we held that the trial court erred in instructing the jury on only two out of the three essential elements of assumption of the risk. *See Bauman*, 539 N.W.2d at 326 (citing *Dartt v. Berghorst*, 484 N.W.2d 891, 894 (S.D. 1992)). Clearly then, Instruction 17, which states that the defendant is ab-

solved from proving any of the elements of assumption of the risk, conflicts with the law of this State. Aside from this error, a third deficiency exists in Instruction 17.[9]

▬▬▬ [¶ 28.] The third deficiency is that the ordinance incorrectly shifts the burden of proof of assumption of the risk from the defendant to the plaintiff. Pursuant to the ordinance, the plaintiff is automatically presumed to assume the inherent risks in alpine skiing. The defendant, therefore, is no longer required to prove the affirmative defense of assumption of the risk. In essence, under the language of the ordinance, the plaintiff has the burden of proving that he or she did *not* assume any risk inherent in the sport of skiing. This is incorrect. For liability to attach, the plaintiff must affirmatively prove negligence, but need not *disprove* inherent risks. The trial court's instruction that Rantapaa had the burden to disprove causation by the dangers inherent in the sport of skiing improperly shifted the burden of proof to Rantapaa and constituted error. Instruction 17, which is based in part on the Skier Responsibility Ordinance, is misleading, confusing and conflicts with the general laws of this State. *Schaffer v. Edward D. Jones & Co.*, 1996 SD 94, ¶ 19, 552 N.W.2d 801, 808; *Wallahan v. Black Hills Elec. Co-op., Inc.*, 523 N.W.2d 417, 423 (S.D.1994).

[¶ 29.] While Instruction 17 is plainly erroneous, we must proceed to the second stage of our analysis and determine whether the trial court's giving of Instruction 17 constituted prejudicial error.

*b.   Was Instruction 17 prejudicial (i.e., would the jury have returned a different verdict if not for the erroneous jury instruction)?*

[¶ 30.] Rantapaa claims that the trial court's submission of Instruction 17 was prejudicial error. In particular, Rantapaa argues that "Instruction 17 went right to the heart of the case." According to Rantapaa, the jury was left with no alternative but to return a verdict for Black Hills Chair. To support his position, Rantapaa maintains that Instruction 17 communicated to the jury that Black Hills Chair could not be held liable if the two skiers collided. In fact, the attorney for Black Hills Chair clung to this proposition in his closing remarks before the jury.

[¶ 31.] In closing argument, the attorney for Black Hills Chair stated that Instruction 17 was:

> [T]ough law, this is tough justice, this is the law and this is what justice is. And you read it as I do, and then you've got to return a verdict for Terry Peak … [I]f you find that a collision between Matthew and [Allen] occurred as a result of an inherent danger and/or a risk of skiing, recovery cannot be had in this case and your verdict must be for [Black Hills Chair].

Therefore, according to Rantapaa, the trial court's submission of Instruction 17 to the jury and defense counsel's closing remarks emphasizing that particular instruction constituted prejudicial error.

▬▬ [¶ 32.] To refute Rantapaa's argument, Black Hills Chair contends that Instructions 18 and 19 cured any misstatement of law in Instruction 17. Immediately after instructing the jury on the Skier

---

**9.** Although the trial court did properly instruct the jury on the three elements of assumption of the risk, the instructions, taken together, were misleading because the trial court also instructed the jury that the defen-

dant was not required to prove the necessary elements of assumption of the risk if Matthew's injury fell within the definition of inherent dangers and risks of skiing in Instruction 17.

Responsibility Ordinance, the trial court gave the following instructions over the objections of Black Hills Chair:

Although a ski area has no duty to protect against risks inherent in the sport, it does owe a duty not to increase the risks of activity beyond risks inherent in the sport.

The foregoing ordinance does not prevent a suit by a skier against a ski area for negligence in design and maintenance, failure to warn and/or failure to supervise operations, which negligence increases the risks of skiing beyond those inherent in the sport.

Defendant Black Hills Chair Lift owed Matthew Rantapaa a duty to use reasonable or ordinary care to see that the premises was in a reasonably safe condition. This duty required the defendant Black Hills Chair Lift Company to keep the property reasonably safe for the benefit of Matthew Rantapaa. The duty includes a duty to warn of concealed or dangerous conditions known to the landowner, a duty to inspect the premises for unreasonably dangerous conditions and a duty to use ordinary care in active operations on the property.

[¶ 33.] Although we review jury instructions as a whole to determine if they establish a full and correct statement of the law, we find that the instructions given in this case, and in particular Instructions 18 and 19, could not dispel the damage done by Instruction 17. *Dunes Hospitality*, 2001 SD 36 at ¶ 7, 623 N.W.2d at 487; *Frazier*, 2001 SD 19 at ¶ 35, 622 N.W.2d at 259; *Veeder*, 1999 SD 23 at ¶ 32, 589 N.W.2d at 618; *Davis*, 1998 SD 31 at ¶ 4, 576 N.W.2d at 526. After the trial court instructed the jury on the Lawrence County ordinance, which defines "inherent dangers and risks of skiing" to include collisions with skiers due to design problems, the jury was left with no choice but to find in favor of Black

Hills Chair. In essence, Instruction 17 operated as a directed verdict in favor of Black Hills Chair. This constitutes prejudicial error in its purest sense.

[¶ 34.] Black Hills Chair also maintains that a much stronger argument against a finding of prejudicial error is that the jury never even reached the issue of whether Matthew had assumed the risks inherent in downhill skiing as those risks were defined in Instruction 17. Notwithstanding Rantapaa's argument that Instruction 17 is contrary to general tort law, Black Hills Chair argues that the giving of Instruction 17 was not prejudicial because the jury specifically found that Black Hills Chair was not negligent. According to Black Hills Chair, since the jury found that it was not negligent, the jury never reached the issue presented in this appeal.

[¶ 35.] We find, however, that the contention of Black Hills Chair is erroneous. The trial court's submission of Instruction 17 foreclosed any claim of negligence against Black Hills Chair; hence, the jury *could not* find against Black Hills Chair under the law as instructed. Accordingly, the jury was forced to find in favor of Black Hills Chair. As stated previously, this embodies prejudicial error.

[¶ 36.] We hold that the trial court's submission of Instruction 17 was prejudicial error.

[¶ 37.] Reversed and remanded for a new trial.

[¶ 38.] MILLER, Chief Justice, and SABERS, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 39.] CALDWELL, Circuit Judge, for AMUNDSON, Justice, disqualified.