2002 SD 108

**Kevin LEISINGER, Plaintiff
and Appellee,**

v.

**Cheryl D. JACOBSON, Defendant
and Appellant.**

**No. 22086.**

Supreme Court of South Dakota.

Considered on Briefs April 22, 2002.

Decided Aug. 21, 2002.

Wilson Kleibacker and Daniel J. Brown of Lammers, Lammers & Kleibacker, Madison, South Dakota, Attorneys for plaintiff and appellee.

Patricia A. Meyers of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Kevin Leisinger (Kevin), Appellee/Plaintiff, sued his former spouse, Cheryl Jacobson (Cheryl), Appellant/Defendant, for malicious prosecution. A jury

awarded Kevin compensatory and punitive damages. Cheryl appeals. We affirm in part, reverse in part and remand.

## FACTS

[¶ 2.] This case is a result of what Cheryl describes as an "acrimonious" divorce.[1] After the decision in the divorce proceedings, Kevin sued Cheryl for malicious prosecution based on conduct that occurred during the pendency of the divorce. Evidence at the malicious prosecution jury trial indicated that on March 6, 1997, after Cheryl started divorce proceedings, both parties remained in the marital home and an argument ensued. Kevin testified that he called 911 after Cheryl grabbed something out of his hands and threw it at him. Cheryl testified that Kevin had grabbed for her neck and her necklace broke. Law enforcement arrived and Cheryl, allegedly following advice of divorce counsel who she had called just prior to the arrival of the police, filed a complaint charging Kevin with simple assault. Kevin was arrested and kept in police custody over night. The following day, Cheryl filed for a temporary restraining order. Prosecution later dismissed the charge.

[¶ 3.] Additionally, testimony showed that on March 18, 1997, a hearing was held and a protection order prohibiting physical and verbal contact, as well as harassment and threats, was issued. Despite Cheryl's request for such an order, Kevin claims Cheryl initiated phone contact with him several times. Subsequently, on March 25, 1997, both parties ended up in the same bar in Sioux Falls, South Dakota. Cheryl alleged that Kevin had been watching her, so she called the police. Kevin claimed he was to meet someone there, but upon discovering Cheryl in the bar, he turned around and left. Cheryl called the police and reported the incident. A criminal complaint was filed, but the charge stemming from this event was dismissed.

[¶ 4.] The jury was presented with a series of other complaints filed following the initiation of divorce proceedings. On May 9, 1997, Cheryl filed a complaint after Kevin approached her at the Minnehaha County Courthouse. There were also several charges for violation of the protection order filed when Kevin allegedly placed mail in Cheryl's mailbox and made phone calls to Cheryl. According to Kevin, however, many of the calls were made in an effort to talk to his daughter and Cheryl initiated conversations with him.

[¶ 5.] On June 11, 1997, the protection order was suspended. On July 9, 1997, Cheryl alleged that Kevin approached her in a Sioux Falls restaurant, followed her and their daughter home and stood on the front step yelling and beating on the front door. Kevin was charged with disorderly conduct for these actions, not a violation of the protection order because it was no longer in place. He was later acquitted. In fact, all of the charges at issue in the malicious prosecution lawsuit were either dismissed, or Kevin was found not guilty of committing the criminal act alleged.

[¶ 6.] Kevin testified that during one of the phone conversations between the parties, Cheryl stated that Kevin was to give her the farm, which had been her family's farmstead, and $100,000 in cash for the divorce settlement, or she would have him arrested. He also alleged that Cheryl drove by his work place and approached him at work, and initiated much of the contact that occurred between the two. He further claimed Cheryl orchestrated the protection order, and violations of it, to obtain leverage against him in the divorce.

---

1. The direct appeal in *Leisinger v. Leisinger,* 601 N.W.2d 283 (S.D.1999), was affirmed by an order directing issuance of judgment of affirmance.

[¶ 7.] On May 23, 2001, a jury entered a judgment in favor of Kevin, awarding him $13,754.67 in compensatory damages and $120,000 in punitive damages. Cheryl appeals the following issues:

1) Whether the trial court should have instructed the jury regarding prosecutorial discretion by the state's attorney.

2) Whether the trial court should have set aside the punitive damage award as unreasonable and excessive.

## STANDARD OF REVIEW

[¶ 8.] When addressing whether the trial court erred in its decision on what jury instructions should have been given at the conclusion of the evidentiary phase of trial, we apply the following standard of review:

> On issues supported by competent evidence in the record, the trial court should instruct the jury. The trial court is not required to instruct on issues lacking support in the record. Failure to give a requested instruction that correctly sets forth the law is prejudicial error. Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury. Error is not reversible unless it is prejudicial. The burden of demonstrating prejudice in failure to give proposed

instructions is on the party contending error. This Court has repeatedly stated that "[a] trial court must present only those instructions to the jury which are supported by competent evidence and set forth the applicable law."

*Parker v. Casa Del Rey–Rapid City, Inc.,* 2002 SD 29, ¶ 5, 641 N.W.2d 112, 115 (citation omitted).

[¶ 9.] In excessive punitive damages review, we have stated that we consider the following: "[Is] the verdict . . . so large as to clearly indicate that it must have been given under the influence of passion or prejudice . . . [?]" *Grynberg v. Citation Oil & Gas Corp.,* 1997 SD 121, ¶ 36, 573 N.W.2d 493, 504. We have further said that to overturn the jury verdict on punitive damages, the amount "must be so excessive as to strike mankind, at first blush, as being, beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant[.]" *Flockhart v. Wyant,* 467 N.W.2d 473, 479 (S.D.1991). Today, we are not disagreeing with our previous statements, but we clarify this standard of review by adopting the abuse-of-discretion standard, which has been implemented by other courts when reviewing punitive damages awards.[2]

2. In *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* the United States Supreme Court stated that when reviewing punitive damage awards, "[i]f no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's 'determination under an abuse-of-discretion standard.'" 532 U.S. 424, 433, 121 S.Ct. 1678, 1684, 149 L.Ed.2d 674 (2001) (citation omitted). *Cooper* held that "[c]ourts of appeals should apply a de novo standard when reviewing district court determinations of the constitutionality of punitive damages awards." 532 U.S. at 424, 121 S.Ct. at 1679, 149 L.Ed.2d 674. Today, we choose to follow the courts that find the abuse of discretion standard applies to issues regarding excessive punitive damages unless the issue has been raised as a constitutional violation, which is reviewed de novo. *See, e.g., Stroud v. Lints,* 760 N.E.2d 1176, 1180 (Ind.App.2002) (holding abuse of discretion standard applies when determining whether punitive damages were properly awarded, and finding de novo review applies when constitutional violations are alleged); *Time Warner Entm't Co. v. Six Flags Over Georgia, L.L.C., et al.,* 254 Ga.App. 598, 563 S.E.2d 178, 182 (Ga.Ct.App.2002) (same). In this case, there is no argument that the

## DECISION

**[¶ 10.] 1) Whether the trial court should have instructed the jury regarding prosecutorial discretion by the state's attorney.**

[¶ 11.] At trial, Cheryl proposed two instructions, which were rejected by the trial judge. Defendant's proposed instruction number 22 states that "[t]he fact that a criminal charge is dismissed by the prosecutor is not, standing alone, sufficient evidence that probable cause is lacking." Defendant's proposed instruction number 23 says:

> You are instructed that if the defendant merely states what is believed, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes independent investigation, the defendant is not regarded as having instigated the proceeding.

In denying these instructions, the trial court held that the court's instructions correctly set forth the law to be applied by the jury in this malicious prosecution case.[3]

■ [¶ 12.] The following elements must be proven to establish a claim for malicious prosecution:

(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceedings; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice; and (6) damages conforming to legal standards resulting to plaintiff.

*Kaarup v. St. Paul Fire and Marine Ins. Co.,* 485 N.W.2d 802, 804 (S.D.1992). Malicious prosecution is a prosecution "begun in malice, without probable cause to believe it can succeed, and which finally ends in failure." *Specialty Mills, Inc. v. Citizens State Bank,* 1997 SD 7, ¶ 9, 558 N.W.2d 617, 620. *See also Manuel v. Wilka,* 2000 SD 61, ¶ 18, 610 N.W.2d 458, 462 (defining elements of malicious prosecution); *Michlitsch v. Meyer,* 1999 SD 69, ¶ 19, 594 N.W.2d 731, 735 (same). If the plaintiff fails to prove any of these six elements, he fails in proving his claim. *Miessner v. All Dakota Ins. Assoc., Inc.,* 515 N.W.2d 198, 200 (S.D.1994).

■ [¶ 13.] In deciding whether the jury was adequately instructed on the ap-

---

excessive award resulted in a violation of the constitution, so the appropriate review is abuse of discretion.

**3.** The court's instruction number 10 stated:

When the expression "proximate cause," which is sometimes called "legal cause," is used, it means an immediate cause of any injury, which, in natural or probable sequence produces the injury complained of. Without the proximate cause, the injury would not occur. The proximate cause need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury.

For proximate cause to exist, you must find that the harm suffered was a foreseeable consequence of the act complained of.

Instruction number 12 given by the trial court stated:

A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure. Malicious prosecution requires six elements:

1. The commencement or continuance of an original criminal or civil judicial proceeding;
2. Its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding;
3. Its bona fide termination in favor of the present plaintiff;
4. The absence of probable cause for such proceeding;
5. The presence of malice; and
6. Damages conforming to legal standards resulting to plaintiff.

plicable laws involved in the malicious prosecution claim, we follow a "two prong approach" for review: "A party challenging as erroneous a jury instruction must show not only 'that the instruction was in error, but also that it was prejudicial error to the effect that under the evidence, the jury ... probably would have returned a different verdict.'" *Rantapaa v. Black Hills Chair Lift Co.*, 2001 SD 111, ¶ 17, 633 N.W.2d 196, 202 (quoting *City of Sioux Falls v. Hone Family Trust*, 1996 SD 126, ¶ 11, 554 N.W.2d 825, 827 (citations omitted)).

[¶ 14.] In this case, the trial court instructed on the elements of malicious prosecution, along with all the definitions to be applied to that claim. Cheryl argues that instruction number 23 should have been given because it presents language closely modeling our language in previous cases. In *Miessner*, we said:

> If the defendant merely states what is believed, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding.

515 N.W.2d at 201. We have acknowledged that if the State's prosecutors do their own investigation, prepare the complaint, or if an informer only tells law enforcement about a possible offense, the informant is not liable for malicious prosecution. *See Weber v. Western Bank*, 336 N.W.2d 652, 653 (S.D.1983); *Malloy v. Chicago, M. and St. P. Ry. Co.*, 34 S.D. 330, 148 N.W. 598 (1914). If the defendant is not "the proximate and efficient cause of maliciously putting the law in motion," but rather the state's attorney or an officer of the law pushes the prosecution forward, that defendant is not liable. *Malloy*, 148

N.W. at 600. Thus, the proposed instructions at issue are not untrue statements. They were, however, unnecessary considering the evidence presented at trial. *See Parker*, 2002 SD 29 at ¶ 14, 641 N.W.2d at 115 (stating the trial court must only instruct on issues "supported by competent evidence" (citation omitted)). Other than Cheryl's own testimony, no witness indicated that the prosecution did its own investigation or made charges other than those Cheryl complained of, or in any way did an independent prosecution. Thus, the record did not support proposed instruction 23.

[¶ 15.] Furthermore, instruction 22 only stated that dismissal of prosecution, in and of itself, is insufficient to prove probable cause is lacking. This, too, is a true statement, but we agree with the trial judge that based on the case he heard, the instructions given explained the applicable law. During the settlement of instructions, the trial judge reasoned:

> I will deny instruction 22 . . . . The issue of whether probable cause is lacking is a fact question for the jury and the other instructions taken as a whole clearly state the law. So this instruction is not necessary and could lead to confusion in this case. So I'll deny 22.
>
> * * *
>
> Twenty-three . . . . [This language from the] *Meissner* case was not the holding of the court but was dicta citing [Keeton, Prosser and Keeton on the Law of Torts § 119 (5th ed.1984)] as is written and as applied to the facts in this case. It is not a complete statement of law and the instructions on malicious prosecution . . . which lists the elements that would give plaintiff the ability to argue the factual issues without this instruction. So 23 is denied.

Clearly, the defense was not precluded from explaining to the jury that probable

cause existed for her complaints or that once she called police and reported the various alleged crimes, it was out of her hands. There is no evidence in the record regarding the prosecution's decision to dismiss the complaint; no prosecuting attorney was questioned in front of the jury and no officer of the law was asked why the charges against Kevin never resulted in convictions. Under our laws, if a party fails to present evidence or witnesses, such nonproduction justifies an inference that the evidence would be unfavorable. *Cody v. Leapley*, 476 N.W.2d 257, 264 (S.D. 1991). "The nonproduction or suppression by a party of evidence which is within his power to produce and which is material to an issue in the case justifies the inference that it would be unfavorable to him if produced." *Id. See also* 29 Am.Jur.2d Evidence § 245 (1994) (stating "[a]n inference may be drawn that withheld evidence would be unfavorable if it is relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it").

[¶ 16.] We conclude that on this record the instructions in the case "provided a full and correct statement of the law." *Thomas v. Sully Co.*, 2001 SD 73, ¶ 4, 629 N.W.2d 590, 591 (quoting *Veeder v. Kennedy*, 1999 SD 23, ¶ 32, 589 N.W.2d 610, 618).

[¶ 17.] **2) Whether the trial court should have set aside the punitive damage award as unreasonable and excessive.**

[¶ 18.] Cheryl's second point of contention is the punitive damage award. In his complaint, and through his testimony at trial, Kevin requested $13,754.67 in actual damages, $50,000.00 for intentional infliction of emotional distress and $50,000.00 in punitive damages. The verdict form for the plaintiff first provided for the award of actual damages and left a blank line. The jury filled $13,754.67 in the blank. Next, the form said "we, the jury ... find that punitive damages should be allowed and award Plaintiff punitive damages of and from the Defendant in the sum of $_____." The jury entered the amount of $120,000.00 in the blank, more than Kevin asked for in emotional distress and punitive damages combined. The form did not, however, ask for a break down of punitive and emotional distress damages, and no instruction explained the law of intentional infliction of emotional distress to the jury.[4] Therefore, the jury obviously awarded $120,000 in punitive damages.

[¶ 19.] This Court has established a five-factor test for determining whether punitive damages are appropriate or ex-

---

4. The appellee argues that the $120,000.00 was for punitive damages and intentional infliction of emotional distress damages. There was no instruction to the jury defining intentional infliction of emotional distress, nor any provision on the plaintiff's verdict form for assessment of such damages. South Dakota pattern jury instruction 145–01 enumerating the elements of intentional infliction of emotional distress could have been presented to the jury. The elements, as described in the pattern instructions, are:

(1) The defendant engaged in extreme and outrageous conduct. (2) [The defendant intended to cause the plaintiff severe emotional distress] or [The defendant acted recklessly causing the plaintiff severe emotional distress]. (3) The defendant's conduct, in fact, caused plaintiff to suffer severe emotional distress. (4) The plaintiff suffered an extreme disabling emotional response to the defendant's conduct.

*See also Maryott v. First Nat'l Bank of Eden*, 2001 SD 43, ¶ 22, 624 N.W.2d 96, 104 (discussing elements of intentional infliction of emotional distress). Kevin presented no evidence regarding symptoms of severe emotional distress. He could have put a psychological expert, or another qualified witness on the stand to prove that he met the elements for intentional infliction of emotional distress, but he did not.

cessive. *Grynberg,* 1997 SD 121 at ¶ 37, 573 N.W.2d at 504.

> We consider: (1) the amount allowed in compensatory damages, (2) the nature and enormity of the wrong, (3) the intent of the wrongdoer, (4) the wrongdoer's financial condition, and (5) all of the circumstances attendant to the wrongdoer's actions.

*Id.*

[¶ 20.] Under the first factor, we have said that there must be " 'a reasonable relationship' between the punitive damages and compensatory damages[,]" but that there is no "precise mathematical ratio between" the two. *Id.* at 38 (citation omitted). We acknowledge that it is difficult to see the relationship between the $120,000.00 granted in punitive damages and the $13,754.67 granted in actual damages, a ratio of approximately 9 to 1. In *Grynberg,* we acknowledged that the ratio there was 13.5 to 1, and noted it was "cause for concern" but proceeded to analyze the four other factors to put the ratio in perspective. *Id.* We do the same here.

[¶ 21.] The second factor requires us to analyze the enormity of the wrong. While we do not condone malicious prosecution, the record demonstrates behavior often exhibited in an acrimonious divorce. And, although the jury determined malicious prosecution occurred, Kevin's actions do not appear to be entirely angelic. Witnesses testified regarding some of his less than cordial behavior towards Cheryl, one of whom was the parties' daughter. Considering the underlying situation, it is extremely difficult for us to do a thorough analysis of this factor. Based on the conflicting testimony in the record, it is also difficult to analyze Cheryl's intent. In an analysis of the fifth factor, the circumstances attendant to the wrongdoer's actions, we have previously looked at the "the availability of other sanctions, including those under our criminal code" and "deterring future misconduct." *Id.* at ¶¶ 46–47. This record reveals no showing of any alternative sanctions to be considered.

[¶ 22.] The fourth factor, the financial condition of the wrongdoer, plays the most vital role in this case based on the evidence at trial. During trial, Kevin testified regarding Cheryl's financial well being. He stated that Cheryl received a significant award of property in the divorce. He then submitted a list of the property Cheryl received in the divorce into evidence, and pointed out that the property was worth $299,174.90. Kevin testified that, in his opinion, the real estate Cheryl received "was worth more than what the judge at the [divorce] trial determined." He went on to state that a gravel pit on the property alone exceeded $300,000 and that the house Cheryl received was worth "a good portion of that." Cheryl submitted some testimony about having to sell a portion of her property to pay attorney fees and testified about the mortgage on her home and the fact that she received $1,000 in monthly alimony, but little else established her net worth, or even gave a fair estimation of it. Moreover, assuming the only number backed by evidence at trial is accurate, the $299,174.90 Cheryl received in the divorce settlement, $120,000.00 punitive award is over forty percent of the amount she received in the divorce. In *Grynberg* we determined the punitive damages equal to ten percent of the defendant's entire net would create too drastic of a financial impact on the defendant to justly uphold the verdict. *Id.* at ¶ 45.

[¶ 23.] We have said that "[p]unitive damages must not be so oppressive or so large as to shock the sense of fair-minded persons." *Schaffer v. Edward D. Jones & Co.,* 1996 SD 94, ¶ 27, 552 N.W.2d 801, 810. We usually leave the question of when

punitive damages should be awarded and in what amount up to juries, but the lack of evidence regarding Cheryl's financial condition, in conjunction with the enormity of the amount of punitive damages is "flagrantly outrageous and extravagant" under the circumstances of this case. *Flockhart,* 467 N.W.2d at 479.

[¶ 24.] In past cases "where we have found the verdict not to be justified under our standard of review and rather based on passion or prejudice, we have reduced, or in the alternative if the reduction was not acceptable to the plaintiff, granted a new trial to the defendant." *Schaffer,* 1996 SD 94 at ¶ 26, 552 N.W.2d at 810. *See also Grynberg,* 1997 SD 121 at ¶ 50, 573 N.W.2d at 508 (reducing punitive damages award); *Shippen v. Parrott,* 1996 SD 105, ¶ 29, 553 N.W.2d 503, 511 (same). Our decision to do so in this case is based on the fact that "the purpose of punitive damages is to punish, not to permanently cripple or destroy." *Grynberg,* 1997 SD 121 at ¶ 49, 573 N.W.2d at 508–09.

[¶ 25.] After considering all of the relevant factors, we conclude that the punitive damage award should be reduced to $25,000. Within 30 days from the date of this opinion, Kevin must file a written election with this Court to either accept or reject judgment in the sum of $25,000, together with interest at the legal rate from the date of judgment of the trial court and costs in that court. If he accepts this amount, the judgment of the trial court will be affirmed. If Kevin does not so elect the above punitive damage award, the punitive damage judgment shall be reversed, and a new trial on punitive damages will be ordered. *See Shippen,* 1996 SD 105 at ¶ 30, 553 N.W.2d at 511 (reducing punitive damage award and giving plaintiff the choice to either accept the reduced amount with interest and court costs or electing a new trial on punitive damages).

[¶ 26.] Affirmed in part, reversed in part and remanded.

[¶ 27.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶ 28.] ZINTER, Justice, concurs specially.

ZINTER, Justice (concurring specially).

[¶ 29.] I concur and write to note that additional record evidence also supports the trial court's decision to not give proposed instructions # 22 and # 23. I also write to note one minor disagreement with the majority's opinion on punitive damages.

[¶ 30.] With respect to the instructions, it should first be noted that there is additional evidence in this record that further justified the trial court's general instructions rather than Cheryl's more specific instructions. For example, there is evidence that a number of the underlying prosecutions were either "citizens arrests" in which Cheryl herself initiated the prosecution, or they were incidents where Cheryl admitted knowing that her complaint would result in a prosecution. This evidence clearly supported the trial court's decision to not give Cheryl's more specific instruction that only applied where the decision to prosecute was left "entirely to the uncontrolled discretion of the officer" (Cheryl's proposed instruction # 23).

[¶ 31.] Additionally, there is record evidence that the motivation for some of Cheryl's actions was to gain leverage in her divorce proceeding. There was also evidence that Cheryl misrepresented material facts in some of the proceedings. All of this evidence supported the trial court's decision to not give Cheryl's more specific instruction that applied where the only

evidence of malice was the dismissal of the criminal charge (Cheryl's proposed instruction # 22).

[¶ 32.] With respect to the issue of punitive damages, I do not agree that the jury "obviously" awarded $120,000 in punitive damages. *Supra* at ¶ 18. Notwithstanding that disagreement, the remittitur is justified by the balance of the majority opinion.