2002 SD 117

**WINTER BROTHERS UNDER-GROUND INC., and Carleen Weatherton, A Taxpayer And Resident of the City of Beresford, Plaintiffs and Appellants,**

v.

**CITY OF BERESFORD, South Dakota, A municipal corporation and Ramstad Construction, Inc., a South Dakota Corporation, Defendants and Appellees.**

Nos. 21969, 21991.

Supreme Court of South Dakota.

Argued Feb. 13, 2002.

Decided Sept. 18, 2002.

Richard J. Helsper of Glover, Helsper & Rasmussen, Brookings, South Dakota, Attorneys for appellant Winter Brothers Underground.

Thomas H. Frieberg of Frieberg, Rudolph & Nelson, Beresford, South Dakota, Attorneys for appellee City of Beresford.

Rick L. Ramstad, Timothy J. Wilka, Thomas K. Wilka of Hagen, Wilka & Archer, Sioux Falls, South Dakota, Attorneys for appellee Ramstad Construction.

GORS, Acting Justice.

[¶ 1.] Winter Brothers Underground (Winter Brothers) appeals the trial court's order granting summary judgment to the City of Beresford (Beresford) and Ramstad Construction (Ramstad). We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On July 10, 2000, Beresford solicited bids from contractors to prepare a parcel of land for the construction of a Slumberland Furniture Regional Distribution Center (Slumberland). The project included storm sewer, water main, sanitary sewer and other site improvements associated with the construction of Slumberland. Beresford advertised its invitation to bid and received four bids, two of which included Winter Brothers and Ramstad.

[¶ 3.] The bid consisted of 31 line items that required bidders to enter either a lump sum bid or a unit price bid. In particular, Item 3 asked for the bidder's lump sum bid to grub and clear the site. This work included "all hauling, crushing, rubberizing, labor, tools and workmanship and disposing of all items designated for removal." The bid also forbade any conditional bids and stated, "[a]ll questions shall be directed to ... Larson Engineering[.]"

[¶ 4.] On July 6, prior to submitting his bid, Cliff Ramstad called Jerry Zeimetz (Zeimetz), the city administrator, and inquired about the possibilities of leaving any excess dirt on the site and disposing of the trees by burning them on site. After contacting the fire marshal, Zeimetz told Ramstad that leaving the dirt and burning the trees would be acceptable. Ramstad also asked Daryl Englund (Englund), the city engineer, if it would be acceptable to place any excess dirt from the project on the adjacent property owned by Beresford. Englund determined this would not pose a problem. Ramstad did not call Larson Engineering to ask these questions, as the bid required. Instead Ramstad relied upon the statements of Zeimetz and En-

glund. Beresford did not file an addendum to the bid explaining that burning the trees and placing the dirt on the adjacent property would be acceptable.

[¶ 5.] After publicly opening the four bids on July 10, Zeimetz announced that Ramstad was the lowest bidder at $271,990.25. Winter Brothers was the next lowest bidder at $280,263.50. Following the opening, Robert Winter (Winter) asked to look at some of the prices on Ramstad's bid. Winter noticed that Item 3 of Ramstad's bid was blank, and he informed the city officials. The bid schedule required bidders to complete a bid for each item requested and forbade any conditional bids. Because of this, Winter informed the city officials that the Ramstad bid was illegal.

[¶ 6.] In response to Item 3, the city officials asked Ramstad, in Winter's presence, if he would accept a bid of zero for Item 3 on the bid schedule. Ramstad agreed. The Beresford City Council accepted Ramstad's bid the evening of July 10. Ramstad began the project the following day.

[¶ 7.] In the weeks that followed, Winter Brothers brought to Beresford's attention two additional issues regarding Ramstad's bid. One issue related to Ramstad's conversations with Zeimetz and Englund about the excess dirt and burning the trees. It was discovered that Ramstad had annotated on the back of his bid the understandings Ramstad had with Englund and Zeimetz about the project. In addition, Ramstad annotated that a manufacturing holdup would delay the installation of storm sewer manhole/drop inlets.[1] Winter Brothers argued that these annota-

---

1. The back of Ramstad's bid stated the following:

The bid is to be that we burn the trees on site a. All extra dirt will remain on city property on site. The manufacturing hold

up of 48" diameter storm sewer manhole/drop inlet will not be built by completion date, therefore, seeding will not be completed after drop inlets are installed.

tions rendered the bid conditional, in violation of the bidding procedures. Englund determined that the annotations were simply clarifications, not unusual in bidding documents.

[¶ 8.] On August 2, 2000, with the project underway, Winter Brothers filed suit seeking, inter alia, declaratory relief and an order to enjoin the award of the bid to Ramstad. Beresford and Ramstad brought motions to dismiss for Winter Brothers' lack of standing as an unsuccessful bidder. On September 7, Winter Brothers filed a motion to amend its complaint, adding Carleen Weatherton (Weatherton) as an additional plaintiff and additional grounds for an injunction. On October 11, the trial court granted Winter Brothers' motion to amend and held Beresford's and Ramstad's motions to dismiss in abeyance until trial. Since the project was completed by September 7, Winter Brothers conceded that its claim for injunctive relief was moot, but continued its claim for damages.

[¶ 9.] On September 8, 2000, Ramstad brought a second motion to dismiss, which Beresford later joined, claiming Weatherton was not a taxpayer with standing to sue. The trial court denied this motion. On February 28, 2001, Ramstad brought motion for summary judgment against Winter Brothers. After a hearing, the trial court granted Ramstad's motion. The court concluded, "Winter does not have standing as an alleged aggrieved bidder to bring an action against [Beresford] or [Ramstad]." The court further concluded that Beresford "complied with the competitive bidding laws of the State of South Dakota and acted within its discretion in awarding [Ramstad] the contract...." The trial court did not consider Ramstad's motion for summary judgment with regard to Weatherton's standing, concluding it was "unnecessary to reach the issue."

[¶ 10.] Winter Brothers appeals on the following issues: (1) whether Winter Brothers has standing to sue as an unsuccessful bidder, and (2) whether Weatherton has standing to sue as a taxpayer.

## STANDARD OF REVIEW

▬▬▬ [¶ 11.] Our standard of review on a trial court's grant of summary judgment is well established. "[W]e will affirm only if all legal questions have been decided correctly and there are no genuine issues of material fact." *H & W Contracting, LLC, v. City of Watertown,* 2001 SD 107, ¶ 7, 633 N.W.2d 167, 171 (citing *Estate of Juhnke v. Marquardt,* 2001 SD 26, ¶ 5, 623 N.W.2d 731, 732). "The evidence is viewed most favorably to the nonmoving party and reasonable doubts are resolved against the moving party." *Brown Eyes v. South Dakota Dept. of Social Services,* 2001 SD 81, ¶ 5, 630 N.W.2d 501, 504. In this case, the facts are not in dispute. Therefore, this Court only needs to determine whether the trial court correctly applied the law. *Id.*

## ANALYSIS AND DECISION

[¶ 12.] **1. WHETHER WINTER BROTHERS HAS STANDING TO SUE.**

▬▬▬ [¶ 13.] Whether a party has standing to sue is a legal question, which this Court reviews under the de novo standard. *H & W Contracting,* 2001 SD 107 at ¶ 9, 633 N.W.2d at 171. Generally, a party establishes standing to challenge the bidding process by showing that he personally suffered an "actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Id.* (citing *Agar Sch. Dist. No. 58–1 v. McGee,* 527 N.W.2d 282, 284 (S.D.1995)). Therefore, Winter Brothers must show that Beresford's action caused an actual or threatened injury.

[¶ 14.]  **a.  Unsuccessful Bidders Lack Standing to Sue.**

[¶ 15.] Winter Brothers claims that Ramstad's bid was illegal, and therefore Winter Brothers was the lowest responsible bidder and entitled to the Slumberland project. This Court addressed a similar situation in *Tri–State Milling Co. v. Bd. of County Comm'rs*, 75 S.D. 466, 68 N.W.2d 104 (1955). *Tri–State's* holding established that the county's advertisement for bids was only an invitation for bids. Consequently, bids on a public contract do not give rise to any private right of enforcement until a bid has been accepted. *H & W Contracting*, 2001 SD 107 at ¶ 10, 633 N.W.2d at 171 (discussing *Tri State, supra* ). In *Tri–State*, the lowest bidder sued the county when he was not awarded the contract. In deciding whether the lowest bidder was an "aggrieved person" with standing to sue, this Court stated, "[t]he requirement that contracts shall be let to the lowest responsible bidder is intended for the protection of the public rather than that of the bidders. No legally enforceable right vested in the appellant merely because it was ostensibly the lowest bidder." *Tri–State*, 75 S.D. at 468, 68 N.W.2d at 105. Therefore, under the rule established in *Tri–State*, Winter Brothers has no entitlement to the contract, can show no actual or threatened injury, and has no standing to sue.

[¶ 16.]  **b.  Favoritism Gives Unsuccessful Bidders Standing to Sue.**

[¶ 17.] This Court has recently, however, adopted a limited exception to the rule announced in *Tri–State*. In *H & W Contracting*, this Court stated, "[w]hen the bidding process has been undermined by 'favoritism, improvidence, extravagance, fraud [or] corruption,' disappointed bidders have standing to sue on behalf of the public's interest." [2] 2001 SD 107 at ¶ 12, 633 N.W.2d at 172 (citing *Fonder v. Sioux Falls*, 76 S.D. 31, 34, 71 N.W.2d 618, 620 (1955)). Winter Brothers argues that Beresford displayed favoritism (1) by accepting Ramstad's bid even though Item 3 was blank, (2) by answering Ramstad's questions and failing to inform the other bidders about the clarification prior to awarding the bid, and (3) by accepting the bid with annotations on the back.

[¶ 18.]  **c.  Favoritism Defined.**

[¶ 19.] Black's Law Dictionary defines "favoritism" as "[i]nvidious preference and selection based on friendship and factors other than merit." Black's Law Dictionary 609 (6th ed. 1990). In *American Totalisator Co., Inc. v. Seligman*, a Pennsylvania court held that favoritism exists whenever the bidders are treated otherwise than by a common standard. 384 A.2d 242, 258 (Pa.Cmwlth. 1977). An opportunity for favoritism is created by the award of a contract to one who fails to submit a bid in full compliance with the bidding requirements. *Gaglioti Contracting, Inc. v. City of Hoboken*, 307 N.J.Super. 421, 704 A.2d 1301, 1307. *See also Gridley v. Engelhart*, 322 N.W.2d 3, 8 (S.D.1982) (a bid change is only material if it gives a bidder a substantial *advantage* over other bidders).

---

2.  *H & W Contracting* also limited the types of suits that can be brought: "Because a disappointed bidder's standing is based on the protection of public interest, it extends only to suits for declaratory or equitable relief seeking to compel compliance with the competitive bid laws.... However, suits by disappointed bidders seeking damages perform no such legitimate public service." 2001 SD 107 at ¶ 14, 633 N.W.2d at 172–73. A disappointed bidder, therefore, has no standing to sue for damages, which includes lost profits and bid preparation. *Id.*

**[¶ 20.] d. Was There Favoritism.**

**[¶ 21.] (1) Accepting Ramstad's Bid with Item 3 Blank.**

[¶ 22.] Winter Brothers alleges that Beresford demonstrated favoritism by accepting Ramstad's bid even though Item 3 was blank. Beresford asked Ramstad if he agreed that a zero could be inserted in the blank and Ramstad agreed. Although the terms of the bid documents and statutory authority prohibited changing the bid, it was within Beresford's discretion to correct a clerical error by inserting a zero in the blank line. *H & W Contracting*, 2001 SD 107 at ¶¶ 18–22, 633 N.W.2d at 174–75. Inserting zero was a detriment to Ramstad because Ramstad was not paid for that work. Conferring a detriment is not favoritism. A bid change is only material if it gives a bidder a substantial advantage over other bidders. *Gridley*, 322 N.W.2d at 8. Winter Brothers' bid for Item 3 was $4,000. If Winter Brothers would have been allowed to reduce its bid to zero for Item 3, Ramstad's bid would *still* have been more than $4,000 lower. The change only gave Ramstad a disadvantage because he had to do the work for nothing. Therefore, Beresford did not show favoritism to Ramstad by reducing Item 3 to zero.

**[¶ 23.] (2) Answering Ramstad's Questions about Burning Trees and Disposing Dirt.**

[¶ 24.] A second claim of favoritism arose out of Item 3. Winter Brothers also alleged that Beresford did not have authority to answer Ramstad's question about whether it could burn the trees and dispose of the dirt on the construction site. In this case, Beresford did not engage in favoritism by answering Ramstad's questions about the Slumberland project. While we agree with Winter Brothers that Beresford should have notified the other bidders of the clarification, failing to do so does not amount to favoritism. Beresford merely answered Ramstad's questions. Courtesy is not favoritism. There is nothing to indicate that if Winter Brothers had called Beresford, it would not have received the same information. In fact, Winter Brothers admitted it also intended to dispose of the dirt on the construction site. Even if Winter Brothers had been given the same information as Ramstad, Winter Brothers would still not be the low bidder.

**[¶ 25.] (3) Accepting Ramstad's Bid with Annotations on the Back.**

[¶ 26.] Winter Brothers complained that Beresford accepted Ramstad's bid with annotations on the back explaining that late delivery of manholes would delay completion of the project. Ramstad's annotations were not noticed until Winter Brothers called the annotations to Beresford's attention after Beresford accepted the bid. Therefore, Beresford did not consider the annotations when it awarded the bid to Ramstad.

[¶ 27.] Beresford had discretion[3] on the bid specifications and was apparently satisfied with Ramstad's performance. Winter Brothers produced no evidence to show that it cost Winter Brothers more to bid the manholes to be deliv-

---

**3.** "The bidding requirements, whether they be statutory or part of the invitation itself, do not act to bind the soliciting agency to any one bidder, regardless of that bidder's compliance with the specifications. Rather, public authorities are vested with wide latitude in determining which bids meet the qualification of lowest responsible bidder." *Spiniello Compa-*

*nies v. City of Cleveland*, No. 76411, 2000 WL 1753386, at *6 (OhioApp8thDist Nov 30, 2000) (citations omitted). "Courts cannot interfere in the exercise of this discretion unless it clearly appears that the city authorities in whom such discretion has been vested are abusing the discretion so vested in them." *Id.*

ered at an earlier date or that it cost less for Ramstad to bid the manholes to be delivered at a later date. Innuendo is no substitute for evidence.

[¶ 28.] The purpose of public bidding is to obtain the lowest price for the work to be done. SDCL 5-18-2. Winter Brothers would have Beresford refuse the lowest bid on technicalities and pay Winter Brothers more to do the work. The bidding process should not be so intricate that the goal of obtaining the lowest price is obscured by technicalities and litigation. A public body possesses great discretion in determining the lowest responsible bidder. As the Pennsylvania Supreme Court noted, "[a]lthough the rule of compliance is ... emphasized, courts have not eliminated the discretionary aspect of executive decision making when the government is confronted with a non-compliant bid that it might choose to consider to achieve effective utilization of the public fisc." *Gaeta v. Ridley Sch. Dist.*, 567 Pa. 500, 788 A.2d 363, 367 (2002). In this case, Winter Brothers failed to show that these minor technical violations of the bidding process made a difference.

[¶ 29.] Winter Brothers' position would cost local governments time and money and promote uncertainty. This was not a case where the low bidder was denied the contract in favor of a higher bidder. Winter Brothers bid $8,000 more than the lowest bid and it seeks relief that would cost Beresford more money. We will not punish Beresford for accepting the lowest bid.

[¶ 30.] **2. WHETHER WEATHERTON HAS STANDING TO SUE AS A TAXPAYER.**

[¶ 31.] The trial court did not consider Ramstad's motion for summary judgment with regard to Weatherton's standing to sue, concluding it was "unnecessary to reach the issue."

[¶ 32.] SDCL 9-1-6 provides that "[a]ny citizen and taxpayer residing within a municipality may maintain an action or proceeding to prevent, by proper remedy, a violation of any provision of [municipal law]." Weatherton must demonstrate, therefore, that she was both a citizen *and* taxpayer of Beresford. Although Weatherton resided in Beresford, she did not own any real property in the City. Weatherton argued, however, that since she paid sales tax she was a taxpayer. We previously rejected this argument in *Stumes v. Bloomberg*, where we stated, "[u]nder the South Dakota statutory scheme, the mere payment of a sales tax by a consumer does not fit within the definition of a taxpayer." 1996 SD 93, ¶ 11, 551 N.W.2d 590, 593. While it was undisputed that Weatherton paid sales taxes that are imposed in Beresford, under *Stumes*, that was not enough to qualify as a "taxpayer." Therefore, Weatherton had no standing to bring suit.

### NO REMEDY

[¶ 33.] Even if Winter Brothers or Weatherton had standing, there was no remedy. Winter Brothers could not seek damages from Beresford for its rejection of Winter Brothers' bid, nor could Winter Brothers seek damages for its bid preparation. *H & W Contracting*, 2001 SD 107 at ¶ 14, 633 N.W.2d at 172-73. Winter Brothers could only sue for declaratory or equitable relief to compel compliance with the competitive bidding laws. *Id.* The project was completed at the time of trial. There was no longer any dispute to settle.

[¶ 34.] The trial court is affirmed.

[¶ 35.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 36.] SABERS, Justice, concurs in result.

[¶ 37.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (concurring in result).

[¶ 38.] I concur in result because no prejudice was shown even though the evidence shows that violations of the bidding laws occurred.

[¶ 39.] The contract specifications required all inquiries to be directed to Larson Engineering. Despite this, Ramstad Construction contacted the City Administrator who obtained for them the right to 1) leave excess dirt on the site and 2) dispose of the trees by burning them on the site. This was favoritism, and all other bidders should have been advised immediately by facsimile or phone.

[¶ 40.] In addition, for Beresford to provide Ramstad an opportunity to accept a bid of zero for item 3 on the bid schedule constitutes favoritism even though it did not result in any damage or prejudice in this situation. Better performance by the bid-letter and the successful bidder, resulting in equal treatment for all bidders, should be required in all future bid lettings.