2003 SD 112

Janet FRITZMEIER, Jay Fritzmeier, Chuck Colmenero, Todd Lundgren, Jack Rentschler, Julie Rentschler, Don Rose, Jean Rose, Mike Wilbur, Steve Brashears and Randy Heaton, Plaintiffs and Appellees,

v.

KRAUSE GENTLE CORPORATION, Defendant and Appellant,

and

Blimpie Midwest, L.L.C., Defendant.

Nos. 22307, 22308.

Supreme Court of South Dakota.

Argued May 29, 2003.

Decided Sept. 10, 2003.

Rehearing Denied Oct. 21, 2003.

Rick Johnson of Johnson, Eklund, Nicholson, & Peterson, Gregory, SD, and

Thomas J. Nicholson of Johnson, Eklund, Nicholson, & Peterson Sioux Falls, SD, for plaintiffs and appellees.

Steven W. Sanford of Cadwell, Sanford, Deibert & Garry, Sioux Falls, SD, and Michael A. Dee of Pingel & Templer, P.C., West Des Moines, IA, for defendant and appellant Krause Gentle Corporation.

GILBERTSON, Chief Justice.

[¶ 1.] This appeal is the result of a jury trial in which eight plaintiffs were awarded compensatory and punitive damages for their allegations of fraudulent misrepresentations against Krause Gentle Corporation (Krause Gentle) which they allege induced them to buy Blimpie Sub franchises. We affirm on all issues except for prejudgment interest.

## FACTS AND PROCEDURE

[¶ 2.] Starting in 1993, Krause Gentle of Des Moines, Iowa entered into a series of "Subfranchise Agreements" with Blimpie International, which entailed the sharing of franchise fees between Krause Gentle and Blimpie International. As part of this business arrangement, Krause Gentle was given the power to engage in "the selling, opening and servicing of all Blimpie Restaurants" in portions of Iowa and eastern South Dakota. Blimpie Midwest, an L.L.C., was used for operational purposes by Krause Gentle and was primarily owned by William Krause and his family.

[¶ 3.] By 1995, Krause Gentle owned and operated several Blimpie restaurants out of its Kum & Go stores. Additionally, Krause Gentle hired Steve Abbott and Todd Byers as area developers to sell Blimpie franchises to others. Although counsel for Krause Gentle argued that Abbott did not represent Krause Gentle, the jury rejected this and found that Abbott was employed by Krause Gentle. Accordingly, Blimpie Midwest is not a party to this appeal. Eventually, the franchises were sold to eight separate newly formed or existing corporations, consisting of the ten individual plaintiffs in this case. These eight corporations operated nine Blimpie restaurants in South Dakota and Iowa. These franchises had to pay a franchise fee of $18,000 plus make a capital investment for equipment and supplies for an investment averaging in excess of $100,000.

[¶ 4.] The Plaintiffs claim that Abbott and Byers held themselves out as experts concerning the Blimpie business. Although Byers did not testify at trial, Abbott was called as a witness for Krause Gentle and denied the allegations against him. Moreover, the Plaintiffs allege that Abbott and Byers made several fraudulent representations to induce them to buy the Blimpie franchises. Specifically, the Plaintiffs allege that they were told that they could expect "immediate cash flow" from their Blimpie franchises; Defendants approved Plaintiffs' business plans knowing that Plaintiffs' projected sales were significantly higher than could be realistically expected[1]; Defendants told Plaintiffs that Blimpie International was in the process of instituting a national advertising program similar to Subway's and that sales would dramatically increase; Krause Gentle would provide its expertise to enable the businesses to be successful; and some Plaintiffs were directly given the gross sales and net profit figures they could expect.[2]

---

1. Average sales in all of the Krause Gentle Corporation Blimpie restaurants for 1994 was $10,384 per month. However, Abbott approved Plaintiffs' business projections of two and three times that much for average monthly sales.

2. The jury did not find that all misrepresenta-

[¶ 5.] Each of the nine Blimpie franchises lost money and ended up going out of business. Soon thereafter, the Plaintiffs commenced this action against Krause Gentle and Blimpie Midwest, alleging fraud and deceit. The actions were brought in their individual names, not in the names of the corporations. Although Krause Gentle moved to sever the claims against it, the trial court denied its motion. Following a five-week jury trial, the jury returned an 89-page special verdict form against Krause Gentle, awarding compensatory damages to eight of the ten Plaintiffs in an amount totaling $747,115.00, and punitive damages to some of the Plaintiffs in the amount totaling $995,000.

[¶ 6.] Krause Gentle appeals the jury's verdict. It raises the following issues for review:

1. Whether the trial court abused its discretion when it refused to grant Defendants' motion to sever.

2. Whether there was sufficient evidence at trial to sustain the jury's finding of fraud on the part of Krause Gentle.

3. Whether the jury's determination of damages should be sustained when Plaintiffs brought their claims in their individual capacities.

4. Whether the jury instruction given at trial amounted to prejudicial error.

5. Whether the jury's awards of punitive damages were inappropriate and excessive.

6. Whether the trial court applied the wrong prejudgment interest rate to the Iowa Plaintiff's judgment against Krause Gentle.

[¶ 7.] Plaintiffs raise the following issue on cross-appeal:

tions were made to all Plaintiffs. *See* ¶ 23 for

1. Whether the trial court abused its discretion when it ruled that Plaintiff Denton Olson's testimony was inadmissible hearsay and granted Defendants' motion to dismiss his claim.

## STANDARD OF REVIEW

[¶ 8.] According to *Landstrom v. Shaver*, 1997 SD 25, ¶ 24, 561 N.W.2d 1, 5, SDCL 15-6-42(b) "allows the trial court the discretion to order separate trials in proper circumstances 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy[.]' " (quoting *Sybesma v. Sybesma*, 534 N.W.2d 355, 360 (S.D.1995)).

[¶ 9.] "When reviewing the sufficiency of the evidence, we accept all evidence favorable to the verdict, and reasonable inferences therefrom, without weighing credibility or resolving conflicts." *Maryott v. First Nat. Bank of Eden*, 2001 SD 43, ¶ 21, 624 N.W.2d 96, 104 (citing *State v. Buchholz*, 1999 SD 110, ¶ 33, 598 N.W.2d 899, 905). If there is evidence if believed by the fact finder that supports the jury's verdict, then we will affirm. *Id.*

[¶ 10.] The question of whether a party has standing to maintain an action is a question of law reviewable by this Court de novo. *Winter Brothers Underground Inc. v. City of Beresford*, 2002 SD 117, ¶ 13, 652 N.W.2d 99, 102.

[¶ 11.] According to *Veeder v. Kennedy*, 1999 SD 23, ¶ 32, 589 N.W.2d 610, 618, we review jury instructions under the following:

Under our standard of review, we construe jury instructions as a whole to learn if they provided a full and correct statement of the law. *Sommervold v. Grevlos*, 518 N.W.2d 733, 739 (S.D.1994);

the jury's verdict.

*Frazier v. Norton,* 334 N.W.2d 865, 870 (S.D.1983); *Mueller v. Mueller,* 88 S.D. 446, 450, 221 N.W.2d 39, 42 (1974). Misleading, conflicting, or confusing instructions create reversible error. *Schaffer v. Edward D. Jones & Co., (Schaffer II)* 1996 SD 94, ¶ 19, 552 N.W.2d 801, 808; *Wallahan v. Black Hills Elec. Co-op., Inc.,* 523 N.W.2d 417, 423 (S.D.1994). Nonetheless, an appellant must show not only that a particular instruction was erroneous, but also that it was prejudicial, meaning the jury probably would have returned a different verdict if the faulty instruction had not been given. *LDL Cattle Co., Inc. v. Guetter,* 1996 SD 22, ¶ 32, 544 N.W.2d 523, 530; *Sybesma,* 534 N.W.2d at 359 (quoting *Chambers v. Dakotah Charter, Inc.,* 488 N.W.2d 63, 64 (S.D.1992)).

(citing *Davis v. Knippling,* 1998 SD 31, ¶ 4, 576 N.W.2d 525, 526–7).

[¶ 12.] The determination of an applicable statutory interest rate is a question of law. *See Wharf Resources (USA) Inc. v. Farrier,* 1996 SD 110, ¶ 43, 552 N.W.2d 610, 618. Therefore, the review is de novo.

[¶ 13.] We review an award of punitive damages under the abuse of discretion standard. *Leisinger v. Jacobson,* 2002 SD 108, ¶ 9, 651 N.W.2d 693, 696. We consider the following question: "[Is] the verdict ... so large as to clearly indicate that it must have been given under the influence of passion or prejudice ... [?]" *Id.* (citing *Grynberg v. Citation Oil & Gas Corp.,* 1997 SD 121, ¶ 36, 573 N.W.2d 493, 504).

[¶ 14.] The trial court's evidentiary rulings are presumed correct and will not be overturned absent an abuse of discretion. *State v. Perovich,* 2001 SD 96, ¶ 11, 632 N.W.2d 12, 15 (citing *State v. Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129). "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d at 129 (citing *State v. Rufener,* 392 N.W.2d 424, 426 (S.D.1986)). While the "ultimate decision to admit or not admit evidence is reviewable under the 'abuse of discretion' standard, the court's preliminary determination of whether the hearsay evidence is reliable will not be overturned unless it is clearly erroneous." *State v. Davi,* 504 N.W.2d 844, 849 (S.D.1993) (quoting *Matter of R.S.S.,* 474 N.W.2d 743, 749 (S.D.1991)).

## ANALYSIS AND DECISION

[¶ 15.] **1. Whether the trial court abused its discretion when it refused to grant Defendants' motion to sever.**

[¶ 16.] Pursuant to SDCL 15–6–20(a), actions may be joined in certain circumstances. Specifically, this statute provides:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief de-

manded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

[¶ 17.] Krause Gentle argues that there is no common question of law or fact that binds all the Plaintiffs. Therefore, it contends that the trial court's denial of Krause Gentle's motion to sever deprived Krause Gentle of a fair trial. Plaintiffs argue that because all the franchises suffered from the lack of advertising, lack of sales, and advisors with no experience, the trial court did not abuse its discretion when it found that severing the trials would be a waste of judicial economy.

■ [¶ 18.] Defendants moved to sever the trials pursuant to SDCL 15–6–42(b), which provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the state or federal Constitution or as given by a statute.

In *Landstrom*, 1997 SD 25, ¶ 28, 561 N.W.2d at 5, we articulated the test to determine whether a trial should be severed: "The mere possibility of some prejudice does not justify separate trials where such prejudice is not substantial and there are strong countervailing considerations of economy." (citation omitted). Furthermore, we stated that the defendants had the burden of proof in establishing that they were prejudiced by the trial court's refusal to sever. *Id.*

[¶ 19.] In *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 42, 612 N.W.2d 600, 610, we held that the trial court did not abuse its discretion when it granted plaintiffs' motion to consolidate their suits. In that case we noted that many of the witnesses would have given duplicate testimony, there were common questions of law and fact among the consolidated cases, and the alleged acts of liability were contemporaneous to each other. *Id.*, ¶ 41.

[¶ 20.] As in *Martinmaas* and *Landstrom*, we find that in the case at hand, in view of the circumstances, the trial court did not abuse its discretion when it denied Defendants' motion to sever. Krause Gentle cannot meet its burden in showing prejudice. The trial was nearly six weeks in length and eight individual trials would have taken months and would not have been an efficient use of judicial resources. Moreover, in *Martinmaas* we noted that "each plaintiff's testimony would have been admissible in the others' cases ..." *Id.*, ¶ 37. The same is true in this case. Because Krause Gentle denied making fraudulent representations to the Plaintiffs, its intent was at issue. Therefore, each of the Plaintiff's testimony would have been admissible in each other's trials to prove Defendant's intent. *See Novak v. McEldowney*, 2002 SD 162, ¶ 13, 655 N.W.2d 909, 914; *see also* SDCL 19–12–5.

[¶ 21.] It is significant to note that the jury awarded different amounts of compensatory and punitive damages to each of the remaining eight Plaintiffs. After it was instructed that each Plaintiff had to prove his or her case separately, the jury found a different basis of fraud for each Plaintiff. Their verdict shows that they were able to sort and weigh the evidence as it pertained to each Plaintiff.[3] This is

---

**3.** Based upon a proposal by Krause Gentle, the trial court submitted an 89-page special

directly in contrast to Krause Gentle's contention that one trial with eight Plaintiffs was confusing and full of chaos.

**[¶ 22.] 2. Whether there was sufficient evidence at trial to sustain the jury's finding of fraud on the part of Krause Gentle.**

[¶ 23.] With respect to eight Plaintiffs in this case, the jury found the following: Krause Gentle made the fraudulent representation that national advertising would be implemented "like Subway" upon reaching the 1,500 store national level to Plaintiffs Janet Fritzmeier, Jack Rentschler, Chuck Colmenero, and Randy Heaton. The jury found that Krause Gentle fraudulently promised operational support to Plaintiffs Janet Fritzmeier, Jack Rentschler, Chuck Colmenero, Don Rose, Randy Heaton and Todd Lundgren. The jury found that Krause Gentle made the fraudulent representation that it would provide reasonable assistance in choosing a store location to Plaintiffs Jack Rentschler, Mike Wilbur and Steve Brashears. Finally, the jury found that Krause Gentle made the fraudulent representation that it was knowledgeable in the operation of fast food restaurants to Plaintiff Todd Lundgren.

[¶ 24.] Krause Gentle argues that under South Dakota and Iowa law, an essential element of fraud claims is the existence of proof that Defendant did not intend to perform the claimed promises when they were made. Furthermore, it claims that the Plaintiffs did not provide any evidence of a deceitful intent on the part of Krause Gentle. For support, it points to *Famous Brands, Inc. v. David Sherman Corp.*, 814 F.2d 517 (8th Cir. 1986). In that case, the Eighth Circuit

Court of Appeals held that under South Dakota law "to avoid summary judgment [plaintiff] must offer some evidence of [defendant's] deceitful intent when [defendant] made its alleged promise." *Id.* at 522.

[¶ 25.] However, *Famous Brands* dealt with a motion for summary judgment on the issue of deceit. The court in that case found that there were no material issues in dispute concerning the issue of deceit and therefore, summary judgment as to the issue of deceit was properly granted. In the instant case, all of Plaintiffs' evidence went before the jury, and the jury was properly instructed on the Plaintiff's burden of proving the elements of fraud and deceit. The Plaintiffs testified as to the alleged representations made by Krause Gentle's agents. Although some of the alleged promises were for future events, there was evidence to allow the jury to find the superior knowledge claimed by Krause Gentle as to the Plaintiffs, who mostly had no experience with running a franchise or fast-food restaurant, was the basis for a finding of fraud.[4]

[¶ 26.] In *Sporleder v. Van Liere*, 1997 SD 110, ¶ 13, 569 N.W.2d 8, 11, we stated that "[q]uestions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." Additionally, in that case we noted that it was the jury's duty to judge the credibility of the witnesses. *Id.*, ¶ 14, 569 N.W.2d at 12. As in *Sporleder* and the case at hand, we find that "[t]he jury's finding that there [was] a promise and that [defendant] never meant to keep the promise is enough to sustain a verdict for fraud and deceit in this case." *Id.*

[¶ 27.] In *Commercial Property Investments v. Quality Inns*, 938 F.2d 870 (8th

verdict form to the jury which it completed as part of its task in arriving at its verdict.

4. See footnote 1.

Cir.1991), the Eighth Circuit Court decided a factually similar case. Plaintiff, who entered into a franchise agreement with defendant, brought a cause of action for fraud. He alleged that several fraudulent misrepresentations and omissions were made to him in order to induce him to enter into the franchise agreement to own and operate a Comfort Inn hotel. *Id.* at 872. After the district court granted defendant's motion for summary judgment, the Eighth Circuit reversed and ruled that defendant should not have been granted its motion for summary judgment on plaintiff's fraud claim. *Id.* at 875. The court found that the plaintiff had relied on defendant's expertise regarding the viability of a Comfort Inn franchise to plaintiff. *Id.* at 877.

[¶ 28.] In the present case, Plaintiffs relied on the expertise of Abbott and Byers. The Plaintiffs were led to believe that Defendants had "superior knowledge" of the fast-food restaurant and would get operational support to make their restaurants profitable. They were told that they could expect immediate cash flows and national advertising. Additionally, they were given sales projections that were not reasonable. Even Krause Gentle's own Blimpie franchises were not generating the profits that the Plaintiff's were told that they could expect their own restaurants to generate.[5] Krause Gentle claims that in each instance, the jury found that Krause Gentle made promises of future performance, the promise was performed, just not to Plaintiffs' satisfaction. However, the jury was properly instructed on the elements of fraud and deceit, and we will not disturb its verdict, absent a showing of prejudice. *See Stockmen's Livestock v. Norwest Bank of Sioux City,* 135 F.3d 1236, 1244 (8thCir.1998) (citing *Weiszhaar Farms, Inc. v. Tobin,* 522 N.W.2d 484, 492

(S.D.1994) (stating that a jury's verdict should receive "all reasonable inferences that fairly can be drawn from the evidence")).

[¶ 29.] Krause Gentle next argues that the Plaintiffs each signed a franchise agreement that contained an express acknowledgment that they had been made no representations as to sales, profits, revenues, and so forth. Therefore, it asserts that the Plaintiffs are precluded from alleging that Krause Gentle made fraudulent misrepresentations to them.

[¶ 30.] Initially, we note that the integration clause was part of the franchise contract drafted by Blimpie International, Inc., who was not a party to the lawsuit. In other words, Krause was not a party protected by the terms of the franchise agreement, which they now seek to use as shield from liability.

[¶ 31.] Aside from the fact that Krause Gentle was not a party to the signed contract, it still does not prevail. In *Schwaiger v. Mitchell Radiology Associates, P.C.,* 2002 SD 97, ¶ 11, 652 N.W.2d 372, 377, we stated that "if a written contract is in direct contradiction of an oral representation, reliance on that oral representation, as a matter of law, is unjustified." However, the facts of the instant case are distinguishable from *Schwaiger.*

[¶ 32.] In *Schwaiger,* we affirmed the trial court's grant of summary judgment. In so doing, we held that the radiologist's claims that he was orally promised to be made a full partner were superseded by the written, signed employment contract. *Id.,* ¶ 12, 652 N.W.2d at 377. We noted that there were no specific material facts which indicated plaintiff was fraudulently induced to enter into the initial employment contract. *Id.,* ¶ 15, 652 N.W.2d at

---

5. See footnote 1.

379. It was in essence a freely negotiated contract between doctors who were contracting equals.

[¶ 33.] However, in the case at hand, the Plaintiffs, most who had little or no experience in running a business, each signed a non-negotiable 25–page contract after they received Blimpie literature which contained representations such as "immediate cash flow" and "no restaurant experience necessary." *See Commercial Property*, 938 F.2d at 875 (denying summary judgment to defendant by stating that the "oral representations occurred at the outset of the sale, creating a fraudulent foundation for the subsequent dealings"). The Plaintiffs claim that these representations contributed to induce Plaintiffs to sign the franchise agreements. Krause Gentle cannot be allowed to use the non-negotiable written contract as a shield from liability. Furthermore, SDCL 37–5A–86 contemplates franchise cases such as this:

> Any condition, stipulation or provision purporting to waive compliance with any provision of this chapter or any rule or order thereunder is void. Any acknowledgement provision, disclaimer or integration clause or a provision having a similar effect in a franchise agreement does not negate or act to remove from judicial review any statement, misrepresentation or action that would violate this chapter or a rule or order under this chapter.

[¶ 34.] **3. Whether the jury's determination of damages should be sustained when Plaintiffs brought their claims in their individual capacity.**

[¶ 35.] Under this issue, Krause Gentle argues that Plaintiffs' recovery for claimed corporate losses is contrary to settled South Dakota and Iowa law. Moreover, it claims that under our holding in *Landstrom*, 1997 SD 25, 561 N.W.2d 1, a shareholder cannot recover personal damages suffered by the corporation. We find *Landstrom* clearly distinguishable from the facts of this case.

[¶ 36.] In *Landstrom*, we adopted the general rule that "an action to redress injuries to a corporation cannot be maintained by a shareholder on an individual basis but must be brought derivatively." *Id.* at ¶ 54, 561 N.W.2d at 12 (citing *Crocker v. Fed. Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir.1987); *cert denied*, 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988); *Meyerson v. Coopers & Lybrand*, 233 Neb. 758, 448 N.W.2d 129, 133 (1989); *Engstrand v. West Des Moines State Bank*, 516 N.W.2d 797, 799 (Iowa 1994)). We further stated an exception to this general rule. Specifically, we recognized that a shareholder may maintain an individual action, he or she must "establish a 'special injury' which is separate and distinct from that of other shareholders." *Landstrom*, ¶ 54, 561 N.W.2d at 12.

[¶ 37.] However, unlike the present case, in *Landstrom*, the claims were brought by a minority shareholder against the remaining shareholders in Black Hills Jewelry Manufacturing. *Id.* ¶ 1, 561 N.W.2d at 2–3. We held that by adopting the majority rule that recovery should be made by the corporation "ensures that all of the corporate participants-stockholders, trade creditors, employees and others will recover according to their contractual and statutory obligations." *Id.* ¶ 62, 561 N.W.2d at 14 (citations omitted). Clearly, this reasoning does not apply here. The Plaintiffs operated their Blimpie's restaurants through wholly-owned corporations. The Plaintiff shareholders were the corporations, so there is no distinction between the two. Further, the damages to the Plaintiffs and Plaintiffs' corporations are

identical. There is no danger of duplication of recovery.

[¶ 38.] The Plaintiffs argue that in the special verdict form the jury specifically found that each Plaintiff purchased a Blimpie franchise in his/her personal capacity rather than as a corporate agent. They further assert that it is they who were ultimately cheated and defrauded into purchasing the franchises. Most of the corporations were not yet formed when the alleged fraudulent misrepresentations were made to the individual Plaintiffs.

[¶ 39.] Krause Gentle cites to *Tri–State Refining v. Apaloosa Company*, 431 N.W.2d 311, 313 (S.D.1988), for the proposition that when a person transfers his or her business rights and interest to a corporation, the corporation is the proper party to bring a fraud action. In that case, we found that plaintiff corporation was the real party in interest because the owner of the business at the time the cause of action arose transferred his rights and interests in his business to the corporation. *Id.* at 313. We held that because defendant did not object to this during trial, the issue was waived for appeal. *Id.* We noted in *Tri–State* that the test for deciding whether the proper party brought suit is if the " 'one who brings the suit has a real, actual, material, or substantial interest in the subject matter of the action.' " *Id.* (citing *Vander Vorste v. Northwestern National Bank*, 81 S.D. 566, 572, 138 N.W.2d 411, 414 (1965)).

[¶ 40.] The Plaintiffs testified about the amount of money they personally lost after investing in the Blimpie Franchise. Although Plaintiffs' damage expert, Jerome Sherman, testified at trial that he calculated damages based upon corporate financial statements and tax returns, the corporations were wholly owned by the Plaintiffs. Additionally many of the corporations were not formed at the time of the fraudulent misrepresentations.

[¶ 41.] **4. Whether the jury instruction given at trial amounted to prejudicial error.**

[¶ 42.] Krause Gentle argues that the trial court prejudicially erred in instructing the jury regarding fraud and deceit under Chapter 21–10, franchise fraud under Chapter 37–5A, actual contract fraud under SDCL 53–4–5 and constructive fraud under SDCL 53–4–6. It alleges that instructing the jury to the elements of both deceit and constructive fraud were confusing as to the proper standard of fraud to be applied.

[¶ 43.] After reviewing the record, Krause Gentle was the party that requested a jury instruction for actual and constructive fraud. In this appeal, Krause Gentle claims it mistakenly made this request but cured it by arguing later to the trial court that it should not be given. However, Krause Gentle did not object to its own actual and constructive fraud instruction based on the reasons it now argues in this appeal.

[¶ 44.] It is a well-settled rule of law that "[w]hen a party's objection at trial is not the same as its objection on appeal, the issue of the improper jury instruction is not preserved for our review." *Grynberg*, 1997 SD 121, ¶ 29, 573 N.W.2d at 502. We therefore find no prejudicial error under this issue.

[¶ 45.] **5. Whether the jury's awards of punitive damages were inappropriate and excessive.**

[¶ 46.] Plaintiffs Fritzmeier, Colmenero, Heaton were each awarded punitive damages of $165,000, Plaintiff Lundgren was awarded punitive damages of $200,000, and Plaintiff Rentschler was awarded punitive damages of $300,000.

Three of the Plaintiffs did not receive any punitive damages. Krause Gentle argues this judgment cannot stand. Alternatively, it argues that amount of punitive damages should be the subject of a remittitur and that no more than 50 percent of actual damages would be appropriate.[6]

[¶ 47.] In *Leisinger*, we set out a five-factor test in determining whether punitive damages are appropriate or excessive. 2002 SD 108, ¶ 19, 651 N.W.2d at 700 (citing *Grynberg*, 1997 SD 121, ¶ 37, 573 N.W.2d at 504). We consider the following:

(1) the amount allowed in compensatory damages, (2) the nature and enormity of the wrong, (3) the intent of the wrongdoer, (4) the wrongdoer's financial condition, and (5) all of the circumstances attendant to the wrongdoer's actions.

*Id.*

[¶ 48.] The first factor is the amount allowed in compensatory damages. We have stated that there must be a "reasonable relationship between the punitive damages and compensatory damages but that there is no 'precise mathematical ratio between' the two." *Leisinger*, 2002 SD 108, ¶ 20, 651 N.W.2d at 700. Furthermore, in *Roth*, 2003 SD 80, ¶ 58, 667 N.W.2d at 668 we cited to *Campbell*, in which the Supreme Court stated that as a general proposition, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." 123 S.Ct. at 1524. However, the Court went on to state that the amount of the award should be based on the individual facts and circumstances of the case. *Id.*

[¶ 49.] In the case at hand, the lowest punitive damage award is 1.31 times compensatory damages. The highest ratio of punitive damages to actual damages was for Plaintiff Rentschler. This Plaintiff was awarded $94,075 in compensatory damages and $300,000 in punitive damages, which amounts to punitive damages of 3.19 times the actual damages. In other cases handed down by this Court, we reversed punitive damages where the ratio was much higher. *See e.g. Leisinger*, 2002 SD 108, 651 N.W.2d 693 (holding that the punitive damages award should be reduced from $120,000 to $25,000); *Grynberg*, 1997 SD 121, 573 N.W.2d 493 (reducing punitive damages from $4,800,000 to $1,000,000); *Roth*, 2003 SD 80, 667 N.W.2d 651 (reversing and remanding punitive damages for a proper calculation under the Supreme Court guideposts).

[¶ 50.] Our review does not end here; instead we examine the second factor, the

---

6. Unlike the defendant in *Roth v. Farner–Bocken Co.*, (2003 SD 80, 667 N.W.2d 651), Krause Gentle does not argue on appeal that the punitive damage award violates its constitutional due process rights.

In *State Farm Mutual Automobile Insurance Co., v. Campbell*, the United States Supreme Court noted that there are "procedural and substantive constitutional limitations" on the award of punitive damages. —— U.S. ——, ——, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585 (2003). The Court reiterated its three guideposts earlier articulated in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), that reviewing courts should consider when reviewing punitive damages. *Id.* at 1520. These guideposts are the following:

1. the degree or reprehensibility of the defendant's misconduct,
2. the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and,
3. the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Campbell*, 123 S.Ct. at 1520 (citing *Gore*, 517 U.S. at 575, 116 S.Ct. 1589). *See also Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S.Ct. 1678, 1687, 149 L.Ed.2d 674 (2001).

nature and enormity of the wrong. Along with this factor, the Supreme Court applies the guidepost of "disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award." Under this guidepost, the *Campbell* Court stated that "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Campbell* at 1524. We emphasized in *Roth, (see conference opinion)*, that the defendant's actions as it related to potential harm that may be inflicted on not only the present victim, but also other victims if it was not deterred was an appropriate consideration. *Roth,* 2003 SD 80, ¶ 62, 667 N.W.2d at 668. (citing *Pulla v. Amoco Oil Co.,* 72 F.3d 648, 659–60 (8thCir.1995) (additional citations omitted)).

[¶ 51.] In this case, the Plaintiffs sought to better their financial conditions by investing in Blimpies' franchises. They were fraudulently induced into investing large amounts of money into their fast food restaurants and lost money from the outset. In the case of the Fritzmeiers, they lost the family farm that Janet had inherited from her parents. Based on the facts of the case, the Plaintiffs suffered great financial hardship as a result of Krause Gentle's actions. Not only were the Plaintiffs harmed, but the possibility of others being fraudulently induced into investing in the Blimpie's franchise was real.[7]

[¶ 52.] The third factor is the intent of the wrong doer. We stated in *Veeder,* 1999 SD 23, ¶ 54, 589 N.W.2d at 621:

> From intent, we determine 'the degree of reprehensibility of the defendant's

conduct,' which is viewed as probably the most important indication of the reasonableness of the punitive damage award.

(quoting *Schaffer II,* 1996 SD 94, ¶ 32, 552 N.W.2d at 812 (citation omitted)).

[¶ 53.] Furthermore, in *Veeder,* we stated that "[t]rickery and deceit are more reprehensible than negligence." 1999 SD 23, ¶ 54, 589 N.W.2d at 621. Here, the jury found that Krause Gentle intentionally made false representations to the Plaintiffs in order to get them to invest their money for the financial gain of Krause Gentle. Promises such as "immediate cash flow" and expertise in helping the restaurants become a success were made to the Plaintiffs. We therefore find that this factor supports the jury's award of punitive damages.

[¶ 54.] The fourth factor is consideration of the wrongdoer's financial condition. We look at both net income and net worth. *See Grynberg,* 1997 SD 121, ¶ 76, 573 N.W.2d at 513. Plaintiffs offered evidence at trial of Krause Gentle's financial statements for the years 1999 and 2000. In 1999 Krause Gentle had $3,804,000 in net income and $3,164,000 in 2000. Net worth for the two years was $21,000,000 in 1999 and $18,000,000 in 2000. Punitive damages amounted to $995,000. In *Leisinger,* we reiterated that "[p]unitive damages must not be so oppressive or so large as to shock the sense of fair-minded persons." 2002 SD 108, ¶ 23, 651 N.W.2d at 701 (citation omitted). An award of 5.5 percent of Krause Gentle's net worth in 2000 is not so high that it shocks the senses.

[¶ 55.] The final factor is consideration of all circumstances attendant to the

---

**7.** In *Roth,* the defendant had no reason to open anyone else's mail without permission other than its ex-employee Roth. It did not even have access to other third party mail which it should not have received. However herein, the more Blimpie franchises Krause Gentle sold to members of the public, the more money it made.

wrongdoer's actions. In *Schaffer II*, we focused on the availability of other sanctions and whether a less drastic remedy could achieve the goal of deterring future misconduct. 1996 SD 94, ¶ 42, 552 N.W.2d at 814. Krause Gentle does not argue on appeal that any other sanctions are available and whether a less drastic remedy could be used.

[¶ 56.] After a review of all the relevant factors, we hold that the punitive damages awarded to Plaintiffs are justified.

[¶ 57.] **6. Whether the trial court applied the wrong prejudgment interest rate to the Iowa Plaintiff's judgment against Krause Gentle.**

[¶ 58.] Krause Gentle asserts that the trial court applied the wrong prejudgment interest rate to Iowa Plaintiffs' award of compensatory damages. The Iowa Plaintiffs in this case are Wilbur, Brashears, Heaton and Lundgren. Instead of applying the interest rate in effect on the date of entry of judgment, it contends that the trial court erroneously applied the interest rate in effect at the time the Plaintiffs filed their original complaint.

[¶ 59.] According to Iowa Code Section 668.13(1), prejudgment interest accrues "from the date of the commencement of the action." Under 668.13(3), the rate of interest is the rate in effect on the date of judgment, plus two percent.

[¶ 60.] Iowa's Plaintiffs' lawsuits were filed on May 15, 1998. Judgment against Defendant was entered on November 20, 2001. The last auction of fifty-two week treasury bills prior to the date of judgment entry was 3.481 percent. Based on that percentage, the correct prejudgment interest rate that should have been applied was 5.481 percent. Apparently erroneously using the last auction of fifty-two week treasury bills immediately prior to May 14, 1998, the trial court applied the rate of 7.407 percent (5.407 percent plus two percent).

[¶ 61.] We, therefore, reverse and remand on the issue of prejudgment interest. *Plaintiffs' cross appeal.*

[¶ 62.] **1. Whether the trial court abused its discretion when it ruled that Plaintiff Denton Olson's testimony was inadmissible hearsay and granted Defendants' motion to dismiss his claim.**

[¶ 63.] Denton Olson made an offer of proof at trial concerning representations allegedly made to him in Rock Rapids, Iowa. It is alleged that Denton Olson's brother, Russell Olson, who was president of a bank holding company for a banking company that was owned by William Krause and who was also a member of the Board of Directors of Krause Gentle, told Denton that he should make an investment in a Blimpie franchise that Russell had recently purchased. Russell allegedly told Denton that they could split profits of at least $40,000 if Olson invested in the Blimpie Franchise that Russell had just purchased. Denton claims Steve Abbott was sitting in on the meeting and never expressed disagreement as to what Russell told Denton.

[¶ 64.] The trial court found the testimony hearsay and ultimately dismissed Denton's claim for lack of other admissible evidence to support it. Denton argues that this was an abuse of discretion and that Denton's testimony concerning what his brother allegedly told him should have been admitted at trial because Russell was an agent of Krause Gentle and the statements were made in the presence of Steve Abbott, another Krause Gentle Agent.

[¶ 65.] We agree that the statements at issue can, under certain circumstances and upon proper foundation, be admitted as non-hearsay admissions (*i.e.* a statement of

an agent concerning the matter within the scope of the agency *see* SDCL 19–16–3(4), Rule 801(d)(2)(D); and nonverbal conduct intended as an assertion by such an agent, *see* SDCL 19–16–3(2), Rule 801(d)(2)(B)). However, we need not address the admissibility of the statements under these rules because Olson failed to establish prejudice. As we have often observed, "[a]n evidentiary ruling will not be overturned unless error is 'demonstrated ... [and] shown to be prejudicial error.' Error is prejudicial when, 'in all probability ... [it] produced some effect upon the final result and affected rights of the party assigning it.' " *Novak*, 2002 SD 162, ¶ 7, 655 N.W.2d at 912 (citations omitted). Here, Olson failed to establish prejudice because, apart from the trial court's evidentiary ruling, he failed to establish his cause of action by introducing another requisite element of a monetary loss or damage. Because the trial court also relied upon this failure to establish a claim, we decline to review the hearsay issue.

[¶ 66.] ZINTER and MEIERHENRY, Justices, concur.

[¶ 67.] KONENKAMP, Justice, concurs in part and concurs specially in part.

[¶ 68.] SABERS, Justice, concurs specially.

KONENKAMP, Justice (concurring in part and concurring specially in part).

[¶ 69.] I join the majority opinion on Issues 1 through 6. I join Justice Sabers' special concurrence on the cross-appeal issue.

SABERS, Justice (concurring specially).

[¶ 70.] I concur on Issues 1 through 6 and concur specially on Issue 7.

[¶ 71.] SDCL 19–16–3(2) (Federal Rule of Evidence 801(d)(2)(B)) provides in part:

A statement is *not hearsay* if it is offered against a party and is ...

(2) a statement of which he has manifested his adoption or belief in its truth; or

...

(4) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]

(Emphasis supplied.)

[¶ 72.] The commentary to FRE 801(d)(2)(B) provides in part:

Under established principles an *admission may be made by adopting or acquiescing in the statement of another* ... [a]doption or acquiescence may be manifested in any appropriate manner. *When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence,* if untrue. The decision in each case calls for an evaluation in terms of probable human behavior.

(Emphasis supplied.) It is not necessary that the out-of-court statement be against the declarant's interest at the time it is made. The statement must be adverse to the party's case at the time of trial and be offered against the party at trial.

Any prior statement of a party is admissible if it is offered against the party at trial. The test is whether the statement is being offered at trial for a purpose that is relevant to the lawsuit. Personal knowledge of the matter admitted is not required, nor is mental capacity. The admission can be oral or written, or nonverbal conduct if intended as an assertion ... [a]dmissions are substantive evidence, and no preliminary foundation by examining the declarant is necessary, the rule being specifically excepted from SDCL 19–14–25 (613(b)).

John W. Larson, South Dakota Evidence, 801.3 (2003 Supp).

[¶ 73.] If Russell Olson was being untruthful in telling his brother that Abbott

said the franchise would bring in $40,000 in the first year, surely Abbot would have "protest[ed] the statement made in his presence." There is nothing in the motion hearing transcript to indicate Abbott protested. However, in order to qualify as an admission, the person making the admission must be a party opponent. Abbott is not a party to this lawsuit and therefore his silence cannot amount to an admission under these facts.

[¶ 74.] Olson argues that Russell was on the board of directors for Krause Gentle and that he was acting as an agent for Krause Gentle when he made the statements regarding profitability. Olson asserts that Russell's comments were not hearsay because they were an admission under FRE 801(d)(2)(D)(a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship). This argument also fails because Olson offered no proof to the jury that Russell was an agent of Krause Gentle. Olson points out that the attorney for Krause Gentle conceded at the hearing on Olson's offer of proof that Russell was on the board of directors. Olson contends that this amounts to a judicial admission and as such should be deemed a settled fact.

[¶ 75.] In *Tunender v. Minnaert,* we defined judicial admissions as statements "made in court by a person's attorney *for the purpose of being used as a substitute* for the regular legal evidence of the facts at the trial." *Tunender v. Minnaert,* 1997 SD 62, ¶ 24, 563 N.W.2d 849, 854 (quoting Black's Law Dictionary 48 (6th ed 1990) (emphasis in the original)). While the attorney certainly acknowledged that Russell was on the board of directors, he made it abundantly clear that he had no intention of allowing his acknowledgement to serve as a substitute for the plaintiffs burden of proving the fact.

[¶ 76.] Olson points to no attempt on the record to present evidence of his brothers directorship before the jury. Indeed, other than his initial offer of proof, the briefs point to no place in this voluminous record where *any* evidence regarding Olsons claim was presented to the jury. Having failed to establish Russell's agency, Olson's claim that Russell's sales pitch was a statement by Krause Gentle's agent or servant is insufficient. The Court need not determine whether Olson has shown prejudicial error because Olson failed to lay the proper foundation to bring this conversation before the jury as an admission by party opponent. However, we continue to disagree with the majority opinion's claim that establishing prejudice is a precondition to establishing error.