#29332-a-SRJ
**2021 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CITY OF ONIDA, SD, a political
subdivision of the State of South Dakota,           Plaintiff and Appellee,

    v.

KASSIE JEAN BRANDT and
TYCE BERTRAM MEYER,                    Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
SULLY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE M. BRIDGET MAYER
Judge

\* \* \* \*

EMILY J. SOVELL
Sovell Law Office
Onida, South Dakota

ZACHARY W. PETERSON of
Richardson, Wyly, Wise, Sauck & Hieb, LLP
Aberdeen, South Dakota                    Attorneys for plaintiff and
                                          appellee.


GAVIN D. POCHOP
STEPHANIE E. POCHOP of
Johnson Pochop & Bartling, LLP
Gregory, South Dakota                     Attorneys for defendants and
                                          appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 11, 2021
OPINION FILED **04/28/21**

#29332

JENSEN, Chief Justice

[¶1.] The City of Onida (City) filed a petition for declaratory judgment seeking authorization from the circuit court to euthanize two dogs owned by Kassie Jean Brandt and Tyce Bertram Meyer (Appellants) as "vicious animals" under ONIDA, S.D., REV. ORDINANCES Title VII, ch. 5 (2010) (Ordinance), or alternatively, based upon a determination that the dogs were dangerous under SDCL 7-12-29. The circuit court concluded the City could not require the dogs to be euthanized under the Ordinance, but found that the requirements of SDCL 7-12-29* were established and authorized Sully County Sheriff Bill Stahl (Sheriff) to dispose of the dogs under the statute. Appellants appeal the circuit court's order directing the Sheriff to dispose of the dogs pursuant to SDCL 7-12-29. We affirm.

**Facts and Procedural History**

[¶2.] Appellants reside in the City of Onida and own two black, Labrador-mix dogs. Prior to this action, they kept the dogs in a fenced-in area of their yard. On February 6, 2020, Appellants' dogs attacked Mark and Fran McQuirk's (McQuirks) corgi-mix house dog. The attack occurred on the McQuirks' property, just outside the door of their home. Shortly after the McQuirks let their dog outside, they heard a loud noise and found Appellants' dogs attacking their dog.

---

\* SDCL 7-12-29 provides:

> The sheriff may take possession of any animal suspected of being dangerous. The sheriff may hold such animal until a formal determination can be made of the extent of the danger such animal poses. If the animal has attacked or bitten a human or an animal pet, the formal determination shall include consultation with the department of health for the purposes of rabies control. The sheriff may dispose of any animal so determined to be dangerous.

-1-

The McQuirks both began to yell, hit, and kick Appellants' dogs to stop the attack. The dogs eventually left after multiple attempts by the McQuirks to free their dog.

[¶3.] The McQuirks' dog was treated for numerous wounds and internal injuries by a veterinarian. The dog died a few days later from internal injuries and complications from an infection caused by the attack. The veterinarian explained that the instinctual shaking of prey by a larger dog, once the larger dog has the prey in its mouth, causes observable, exterior bite wounds and internal injuries that are difficult to identify.

[¶4.] Testimony also revealed prior incidents involving the Appellants' dogs. The first occurred in May or June 2018 when Appellants' dogs ran up to an Onida resident, Laurie Miller, while she was working outside her house. The dogs were barking loudly and standing near her. Miller testified that she froze and believed the dogs were going to attack her. The dogs eventually retreated on their own. A second incident occurred in June 2019 when Appellants' dogs attacked the McQuirks' dog. When Mark McQuirk attempted to intervene, Appellants' dogs bit him. There was also testimony that the dogs may have killed Appellant Brandt's pet cat.

[¶5.] The prior incidents involving Miller and the McQuirks were reported to the Sheriff, who also provided Ordinance enforcement for the City. Miller called the Sheriff immediately after the incident with Appellants' dogs. When the Sheriff arrived at Miller's home, he found Appellants' dogs in his own yard, which was near Miller's home and Appellants' home, and put them back in their kennel. After Appellants' dogs attacked the McQuirks' dog in 2019, the Sheriff attempted to

resolve the issues between the neighbors without taking formal action. He testified that, in hindsight, he should have taken action at that time and declared the dogs to be vicious under the Ordinance.

[¶6.] Appellants took remedial measures following the first two incidents to prevent the dogs from getting out of their kennel. They installed taller fencing and a bottom-wire electric fence with boards. Despite these improvements, the dogs escaped through a hole in the fence prior to the February 2020 fatal attack on the McQuirks' dog.

[¶7.] After the attack, the Sheriff formally declared Appellants' dogs "vicious animals" and gave written notice of this determination to Appellants, pursuant to the Ordinance, on February 12, 2020. On the same day, the City obtained a temporary restraining order to remove the dogs from Appellants' home and place them at Lake Sharpe Kennels in Fort Pierre, South Dakota, until further order from the court.

[¶8.] After receiving the vicious dog notice, Appellants attempted to comply with the Ordinance by undertaking more kennel improvements and other steps required by the Ordinance. Appellants also had their dogs evaluated by a professional dog behaviorist. The dog behaviorist testified that the dogs were generally friendly and could receive additional training to address their aggressive behavior that would minimize any risk to others. Appellants also presented testimony from several witnesses that described the dogs as friendly.

[¶9.] The City filed a petition for declaratory judgment requesting, among other relief, that Appellants' dogs be determined vicious animals under the

Ordinance and requested authorization from the court to require the euthanization of both dogs pursuant to the Ordinance. Alternatively, the City sought a determination of dangerousness under SDCL 7-12-29 and requested an order allowing the Sheriff to dispose of the dogs.

[¶10.] The parties entered into a written stipulation concerning the issues and evidence to be presented at trial. The issues, as framed by the parties, included a request that the circuit court determine whether Appellants violated state and municipal laws, including SDCL 40-34-2 (criminalizing the ownership of a dog that killed another domestic animal) and title VII, chapter 4, section 3 of the Ordinance (prohibiting dogs from running at large). The parties also sought a ruling on whether the facts supported the Sheriff's vicious animal determination under the Ordinance. The final issue, pertinent to this appeal, read: "[i]n the event that animals shall be determined dangerous and/or vicious within the meaning of the Municipal Code of the City of Onida or State law, does SDCL 7-12-29 or other applicable law support the Sheriff's determination for disposal of the animals through euthanasia . . . ."

[¶11.] The court found Appellants violated SDCL 40-34-2 by owning a "dog that chases, worries, injures, or kills any . . . domestic animal . . . ." The court further found under the Ordinance that the dogs were improperly unleashed and running at large within city limits and that the dogs were "vicious animals." However, the court determined the City could not require Appellants to euthanize the dogs under the Ordinance because no "vicious animal" notice had been given to Appellants prior to the fatal attack on the McQuirks' dog. However, the court found

that Appellants' dogs were dangerous under SDCL 7-12-29 and authorized the Sheriff to dispose of the dogs pursuant to that statute. The circuit court stayed the order pending this appeal.

[¶12.] On appeal, Appellants challenge the City's authority to request that the Sheriff dispose of the dogs under SDCL 7-12-29 after the circuit court denied such relief under the Ordinance. Appellants also argue that the circuit court erred in determining the dogs were dangerous and authorizing the Sheriff to dispose of the dogs under SDCL 7-12-29 in absence of a showing that the Department of Health had been consulted.

## Analysis and Decision

### 1. *Whether the City can proceed with animal regulation under State law after the circuit court denied relief under the Ordinance.*

[¶13.] "The interpretation of an ordinance presents a question of law reviewable de novo." *Atkinson v. City of Pierre*, 2005 S.D. 114, ¶ 10, 706 N.W.2d 791, 795. Our statutes expressly empower cities in South Dakota to "'enact, make, amend, revise, or repeal' ordinances they deem necessary to effect their authority." *City of Marion v. Schoenwald*, 2001 S.D. 95, ¶ 6, 631 N.W.2d 213, 216 (quoting SDCL 9-19-3). The authority to regulate dogs within a jurisdiction is among the express powers granted to cities from the State of South Dakota in SDCL 9-29-12. *City of Pierre v. Blackwell*, 2001 S.D. 127, ¶ 10, 635 N.W.2d 581, 584.

[¶14.] "Aside from [the] statutory grant of legislative power, a [city or] county may not pass an ordinance which conflicts with state law." *Rantapaa v. Black Hills Chair Lift Co.*, 2001 S.D. 111, ¶ 22, 633 N.W.2d 196, 203 (citing S.D. Const. art. IX,

§ 2). "A conflict arises between an ordinance and a statute only when their express or implied terms are irreconcilable, where the ordinance permits that which the statute forbids, or where the ordinance forbids that which the statute expressly permits." *Snow Land, Inc. v. City of Brookings*, 282 N.W.2d 607, 608 (S.D. 1979) (citing *Mangold Midwest Co. v. Village of Richfield*, 143 N.W.2d 813, 816-17 (Minn. 1966)).

[¶15.]     Here, the Ordinance sets forth procedures for animals declared to be vicious. Ordinance Section VII.5.1 to 5.12. Upon notification that an animal has been declared vicious, the Ordinance requires the owner to comply with certain conditions to keep the vicious animal within the City. Ordinance Section VII.5.5, 5.7 to 5.9. If an owner fails to comply with the requirements for keeping a vicious animal, the City may require the owner to euthanize the animal pursuant to the Ordinance. Ordinance Section VII.5.11.

[¶16.]     The Ordinance provides procedures for city officials to protect the community from vicious animals. The City's scheme appears similar to those implemented in other cities and to the common law "one-bite rule" for civil liability. *See Blackwell*, 2001 S.D. 127, ¶¶ 2-3, 635 N.W.2d at 583 (discussing a city ordinance governing dangerous animals). "The 'first bite' rule has been described as not literally a test for a prior bite but rather a test of the owner's superior knowledge of the dog's temperament." 3B C.J.S. *Animals* § 369, Westlaw (database updated Dec. 2020).

[¶17.]     While Appellants' dogs had been involved in prior incidents, they had not been declared vicious animals under the Ordinance until February 12, 2020.

Under these circumstances, the circuit court concluded that the City could not euthanize the dogs under the Ordinance. Neither party has appealed this determination by the circuit court.

[¶18.] The question presented on appeal is whether the circuit court could order the Sheriff to dispose of the dogs under SDCL 7-12-29. SDCL 7-12-29 allows a sheriff to take possession of any animal suspected of being dangerous, continue to hold the animal until a formal determination of dangerousness can be made, and dispose of the animal through humane means if it is determined to be dangerous.

[¶19.] Appellants argue that the City improperly used a "hybrid" process that combined the Ordinance and state law to create a remedy in this case, and such a remedy was not available after the circuit court concluded the City could not proceed under the Ordinance. Contrary to Appellants' claim, the City requested the removal and disposal of the dogs under two alternative legal theories: the Ordinance and state law. The circuit court found that the Ordinance could not offer relief because law enforcement had not provided Appellants written notice, prior to the fatal attack, that their dogs had been declared vicious. The court separately determined that the requirements of SDCL 7-12-29 were established and granted relief under state law.

[¶20.] Appellants also claim that the Ordinance was the only means of animal enforcement within Onida's city limits and that the City cannot rely on state law when it was not authorized to dispose of the dogs under the Ordinance. However, Appellants fail to cite any authority to support their claim that the City could not ask the circuit court to make a determination of dangerousness and order

the Sheriff to dispose of the dogs pursuant to state law. SDCL 7-12-29 provides a sheriff with specific authority to regulate animals and to dispose of an animal after a formal determination of dangerousness is made.

[¶21.] Further, there is nothing that limited the Sheriff's authority within city limits. SDCL 7-12-1 provides county sheriffs with authority to keep peace throughout the county:

> The sheriff shall keep and preserve the peace within the county. The sheriff may call to aid any person or power of the county as the sheriff deems necessary. The sheriff shall pursue and apprehend all felons, and shall execute all writs, warrants, *and other processes from any court or magistrate for which the sheriff has the legal authority*.

(Emphasis added). This statute granted the Sheriff broad authority within the county and did not restrict his authority while acting within city limits. *Compare* SDCL 7-12-1 (providing a sheriff broad authority throughout a county) *with* SDCL 9-29-1 (restricting a municipality's jurisdictional power to "territory within the [municipality's] corporate limits").

[¶22.] Finally, as the City correctly observes, accepting Appellants' arguments would create a conflict between the Ordinance and state law. Under Appellants' theory, the Sheriff would have been prohibited from disposing of the dogs under SDCL 7-12-29 because the Ordinance alone would control and limit the Sheriff's ability to proceed under state law once the dogs were determined to be dangerous. In Appellants' view, "the ordinance forbids that which [South Dakota] statute expressly permits." *Snow Land, Inc.*, 282 N.W.2d at 608 (citing *Mangold Midwest Co.*, 143 N.W.2d at 816). Thus, Appellants' interpretation creates conflict between the Ordinance and state law and insists that the Ordinance should

preempt state law. Where conflict exists between an ordinance and state law, state law prevails. *See Rantapaa*, 2001 S.D. 111, ¶¶ 25-28, 633 N.W.2d at 204-05 (discussing that ordinances are invalid where they conflict with state law).

[¶23.] Admittedly, this case is unique because the Sheriff wore two different hats as the City's code enforcement officer and as the chief law enforcement officer within the county. Despite the circuit court's conclusion that the City could not proceed to dispose of Appellants' dogs under the Ordinance, the circuit court correctly found that this would not prevent the Sheriff from proceeding under SDCL 7-12-29. The City requested that the Sheriff exercise his authority under state law within city limits, and Appellants have not cited any legal authority to support a claim that the Sheriff could not act under SDCL 7-12-29 within city limits. Thus, the Sheriff was authorized to proceed under the process outlined in SDCL 7-12-29 when requested by the City to do so.

> **2.** **Whether the circuit court properly determined that the Sheriff could dispose of the dogs under SDCL 7-12-29.**

[¶24.] Appellants do not challenge the circuit court's determination that the dogs were dangerous under SDCL 7-12-29. Instead, they argue the circuit court erred by entering an order to permit the Sheriff to dispose of the dogs under the statute without first requiring consultation with the Department of Health for the purpose of rabies control.

[¶25.] At trial, there was no testimony showing that the Department of Health had been consulted concerning Appellants' dogs, nor was there an attempt to consult with the Department of Health as part of the court's formal determination

of dangerousness. However, in their proposed findings of fact and conclusions of law submitted after the trial, Appellants objected to the order to dispose of the dogs, arguing that "[t]here was no testimony or evidence offered that the . . . Sheriff consulted with the Department of Health as required by § SDCL 7-12-29." The circuit court's conclusions of law "specifically reject[ed any] inference or claim that since [the Sheriff] didn't consult with the Department of Health for purposes of rabies control under SDCL 7-12-29, that this statute [did] not apply." The court reasoned that a consultation for rabies control was unnecessary since the McQuirks' dog died and "[e]ven if this contact was required, that does not take away the authority of the sheriff to dispose of any animal that he determines to be dangerous."

[¶26.]     Appellants argue that the circuit court's reading of the statute was erroneous because SDCL 7-12-29 required consultation with the Department of Health as part of a formal determination of dangerousness before the dogs could be disposed of. Appellants point to the language of the statute that when an animal pet or human has been bitten, "the formal determination *shall* include consultation with the department of health for the purposes of rabies control." SDCL 7-12-29 (emphasis added). The City initially responds that Appellants waived this issue by failing to cite authority to support their argument. We disagree. Appellants rely upon the language of SDCL 7-12-29 to support their claim.

[¶27.]     The interpretation of a statute is a question for the court and reviewed de novo. *State ex rel. Dep't of Transp. v. Clark,* 2011 S.D. 20, ¶ 5, 798 N.W.2d 160, 162. "One of the primary rules of statutory construction is to give words and

phrases their plain meaning and effect." *Zoss v. Schaefers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552 (quoting *S.D. Subsequent Inj. Fund v. Cas. Reciprocal Exch.*, 1999 S.D. 2, ¶ 17, 589 N.W.2d 206, 209). "When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *Id.*

[¶28.]    The plain language of SDCL 7-12-29 requires that if an animal pet or a human has been attacked or bitten, "the *formal determination shall include* consultation with the department of health for the purposes of rabies control." (Emphasis added). Nevertheless, the City argues that the statute did not require consultation in this case because there was no reason to believe that the animals involved were rabid or posed a public health risk. The City does not offer any authority for this claim. Instead, it relies on the evidence that the McQuirks' dog died and the parties stipulated that Appellants' dogs "were up-to-date on their necessary vaccinations at the time of the incident." The City also argues that there was sufficient evidence of the dogs' aggressive behavior to support the circuit court's determination of dangerousness—notwithstanding the failure to consult with the Department of Health.

[¶29.]    The City's reading of SDCL 7-12-29 is contrary to the statutory directive that, when an animal has attacked a human or pet, "the formal determination [of dangerousness] shall include consultation with the department of health for the purposes of rabies control." The statute creates no exceptions to the consultation requirement when a human or pet has been attacked or bitten, and we

decline to read an exception into the statute that does not exist. *See Olson v. Butte Cnty. Comm'n*, 2019 S.D. 13, ¶ 10, 925 N.W.2d 463, 466 (rejecting a proffered interpretation of a statute when it would require the court to "add language that simply is not there").

[¶30.]    Undoubtedly, the text of SDCL 7-12-29 includes both public safety and public health considerations when making a formal determination of dangerousness. For instance, a rabid animal clearly poses both a public safety and a public health risk. In other cases, a non-rabid animal may also be determined to be dangerous based solely upon public safety considerations. However, whenever an animal suspected to be dangerous has attacked or bitten a human or pet, the Legislature has mandated that public health concerns require that the dangerousness determination include a consultation with the Department of Health—regardless of the perceived public health risk in each case. The language of the statute does not excuse this requirement simply because the animal may be determined to be dangerous without consulting the Department of Health, or because the public health risk an animal poses is perceived to be low. Therefore, the formal determination of dangerousness in this case required that the Department of Health be consulted.

[¶31.]    Nonetheless, we conclude the circuit court's error, in failing to require consultation with the Department of Health as part of its formal determination of dangerousness, was harmless. "[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise

disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." SDCL 15-6-61 (defining harmless error). *See also Voorhees Cattle Co. v. Dakota Feeding Co.*, 2015 S.D. 68, ¶ 17, 868 N.W.2d 399, 408 (quoting *Schoon v. Looby*, 2003 S.D. 123, ¶ 18, 670 N.W.2d 885, 891) ("Error is prejudicial if it 'most likely has had some effect on the verdict and harmed the substantial rights of the moving party.'").

[¶32.] There is no showing that the failure to consult with the Department of Health had any effect on the court's decision, or that it harmed the substantial rights of the Appellants. The circuit court found the dogs were dangerous under SDCL 7-12-29 based on the public safety concerns that the dogs would attack another human or pet. No public health concerns were raised concerning the dogs, nor was there any claim that consultation with the Department of Health for purposes of rabies control would have impacted the court's dangerousness determination. Rather, the parties stipulated at the outset of the case that the dogs had been vaccinated for rabies. Further, Appellants have not sought to remand the case to allow consultation with the Department of Health, and there is no showing that remanding the case for a public health consultation would serve any purpose at this stage of the litigation. The fatal attack by Appellants' dogs occurred more than twelve months ago, the McQuirks' dog died in the care of a veterinarian, and Appellants' dogs have remained kenneled during the litigation.

[¶33.] We affirm the judgment of the circuit court ordering that "the Sheriff may now dispose of [Appellants' two dogs] through humane euthanasia."

[¶34.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.

-13-